.JOHN NOVOSAD ET AL. V. R. A. SVRCEK.

No. 6973.  Decided February 24, 1937.
(102 S. W., 2d Series, 393.)

*John P. Ehlinger,* of Lagrange, for plaintiffs in error.

The debtor's act in signing, acknowledging, and delivering to the creditor, at the instance of the latter, a contract of extension, constitutes a consideration for the creditor's forbearance for the time therein specified. Drake v. Pueblo National Bank, 44 Colo. 49, 96 Pac. 999; Benson v. Phipps, 87 Texas 578, 29 S. W. 1061; 8 C. J. 428.

An informal written promise or acknowledgment, signed by the debtor, will not only interrupt the statute of limitations and cause it to start running anew on an overdue debt, but will also revive a barred debt, together with the lien securing same, as against a junior incumbrancer with notice who became such prior to the bar of the statute. Ware v. Bennett, 18 Texas 794; Jolly v. Fidelity Union Trust Co., 298 S. W. 530; Caffarelli Bros. v. Pearce, 34 S. W. (2d) 813 (Com. App.).

*Moss & Moss,* of Lagrange, for defendant in error.

The lien claimed by the plaintiffs in error and asserted by them as a prior lien of that of defendant in error was barred by the statute of limitations. McMullen & Co. v. Hamman, 34 S. W. (2d) 909; Kirby v. American State Bank of Amarillo, 18 S. W. (2d) 599; Tsesmelis v. Sinton State Bank, 53 S. W. (2d) 461.

*Brooks & Yarbrough, Henry H. Brooks,* and *C. F. Zimmerman,* all of Austin, *Stewarts* and *W. Noble Carl,* all of Galveston, *Raymond Edwards, Samuel Peterson* and *W. J. Howard,* all of San Antonio, filed briefs as amici curiae.

MR. JUSTICE SHARP delivered the opinion of the Court.

The sole question presented in this suit is whether the renewal and extension of notes payable "on or before" a certain date, with no additional consideration being paid for the renewal and extension, is sufficient to toll the statute of limitations. The dispute between the parties arose as to the priority of liens held by them against certain tracts of land. The trial court held that because the extension agreements contained the term "on or before" and changed neither the amounts of the principal nor the interest rate of the original notes, and no additional consideration therefor was paid, said agreements were without consideration and void; that consequently the statute of limitations applied; and that the senior lien sought to be renewed and extended became subordinate to the junior lien. The Court of Civil Appeals affirmed the judgment of the trial court. 84 S. W. (2d) 247.

R. A. Svrcek filed suit in the district court against certain

defendants, including John, Joe, and Frank Novosad, to foreclose his deed of trust lien on certain lands and for judgment declaring that the rights of the Novosads in said lands were inferior to his lien. The Novosads answered by alleging their ownership of three certain vendor's lien notes held by them for money advanced for the purchase money of the land sought to be subjected to the foreclosure of Svrcek's lien. It is shown that on the 7th day of December, 1920, Charles Blinka and wife conveyed the land to Peter P. Jurica, and that a vendor's lien was retained in favor of each of the Novosads for the sum of $325.00; that on November 20, 1923, F. C. Knippel acquired this land from Jurica and his children, and Knippel assumed the payment of the three notes held by the Novosads; that the note held by John Novosad became due on December 7, 1923, the note held by Joe Novosad became due on December 7, 1924, and the note held by Frank Novosad became due on December 7, 1925; that F. C. Knippel executed an instrument in writing, dated December 22, 1926, renewing and extending the three notes as follows: Note No. 1, payable to John Novosad, to become due and payable on or before December 7, 1930; note No. 2, payable to Joe Novosad, to become due and payable on or before December 7, 1931; and note No. 3, payable to Frank Novosad, to become due and payable on or before December 7, 1932. It is further shown that on the 22d day of January, 1931, F. C. Knippel again renewed and extended the three notes, making note No. 1 due on or before December 7, 1934, note No. 2 due on or before December 7, 1935, and note No. 3 due on or before December 7, 1937. Except for the promise to pay the principal and interest stipulated in the three notes held by the Novosads, no other consideration was paid for the renewal and extension of said notes by Knippel. Both extension agreements were duly acknowledged and were duly recorded on January 24, 1931.

On November 15, 1928, F. C. Knippel borrowed $2225.00 from R. A. Svrcek, and executed a note for that amount, together with a deed of trust to secure the payment of his note on the land involved in this suit. The Novosads prayed for judgment establishing the superiority of their lien on the land in controversy to that asserted by Svrcek; but, as stated above, the trial court ruled against them.

Svrcek contends that because the extension agreements contained the term "on or before" they constituted unilateral contracts; that they did not mutually bind the parties and were without consideration; and that, therefore, the four years statute of limitations applied. The Novosads, on the other hand,

contend that the renewal and extension contracts executed by Knippel, extending the time of payment of the three vendor's lien notes held by them, were binding and valid.

1  There is no ambiguity in the extension and renewal contracts executed by Knippel to the Novosads relating to the vendor's lien notes held by them. The time for future payment was definitely fixed. The decisions of this State clearly sustain the rule announced by 6 Texas Jurisprudence, p. 827, Sec. 187, which reads:

" * * It is a general rule of the law of contracts that an extension of the time of payment by which one party secures the benefit of an interest-bearing obligation for a definite period and the other secures the benefit of a forbearance for the same period may constitute a sufficient consideration to uphold the agreement. This rule applies, of course, to the extension of a note for a stipulated time. * * "

2  Furthermore, the question of consideration is controlled by the provisions of the Negotiable Instruments Act. (Article 5932 et seq., Revised Civil Statutes.) Sections 24 and 25 of Article 5933 of that act read as follows:

"Sec. 24.  Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value.

"Sec. 25.  Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time."

3  The term "on or before" has long been used in contracts and promissory notes, and such term has a definite meaning. The great weight of authority, including the opinions of this Court, sustains the general rule announced in 8 Corpus Juris, p. 400, Sec. 590, which reads as follows:

"Where paper is payable 'on or before' a fixed time the maker simply has an option to pay it before the time fixed, and the paper does not mature until the expiration of that time. * * " (See decisions cited in the notes thereunder.)

Section 4 of Article 5932 of the Negotiable Instruments Act of this State recognizes the term "on or before" in the following language:

"Sec. 4.  An instrument is payable at a determinable future time, within the meaning of this Act, which is expressed to be payable:

* * *

"2. On or before a fixed or determinable future time specified therein; * * *"

See, also, Bigelow on Bills, Notes and Checks (3d ed.), p. 87, Secs. 138 and 139, and Harvard Law Review, Vol. 32, p. 757.

4. The undisputed facts disclose that the original dates of maturity of the three notes held by the Novosads were December 7th of the years 1923, 1924, and 1925. It is also undisputed that Knippel on November 15, 1928, executed his note to Svrcek for $2225.00, and gave a deed of trust lien to secure same. It clearly appears that the notes held by the Novosads were not barred by limitation at the time Svrcek obtained his note, and that the Novosads at that time held the first lien and Svrcek held a junior lien. The rule is now settled that the vendee may execute an extension to the holder of the original vendor's lien notes without the consent of a party who holds a subsequent lien on the land, and said agreement is binding on the junior lien holder. Caffarelli Bros. v. Pearce et al., (Com. App.) 34 S. W. (2d) 813; Howell et al. v. Townsend, (Civ App., writ refused), 217 S. W. 975, and authorities cited therein; Wilkinson et al. v. First Nat. Bank of Crosbyton, 118 Texas 202, 13 S. W. (2d) 346. It has also been held that where a party acquires a junior lien when the senior lien was in force, and while the junior lien was in force the first lien became barred by limitation and it was renewed and extended in writing, duly acknowledged and recorded, said renewal of the first lien would be binding on the junior lien holder. Caffarelli Bros. v. Pearce et al., supra; Howell et al. v. Townsend, supra; T. A. Hill State Bank of Weimar et al. v. Schindler et al., 33 S. W. (2d) 833; Watson et al. v. First Nat. Bank of Coleman, (Com. App.) 285 S. W. 1050.

5. The fact that the extension agreements were not recorded until January 24, 1931, is immaterial in deciding this case. Knippel, the owner of the land, executed the renewal and extension agreements to the Novosads while the original vendor's lien notes held by them were in full force and unpaid. The promise to pay the principal and interest due as stipulated in the three notes was sufficient consideration for the execution of the extension and renewal agreements. It being undisputed that at the time Svrcek acquired his lien the original vendor's lien notes held by the Novosads were in force and unpaid, Svrcek is in no position to claim that he was a lien holder without notice of the lien held by the Novosads.

Article 5522 of the Revised Civil Statutes prescribes the general rule regarding how a lien may be continued in force,

and provides:

" * * if the contract of extension is signed and acknowl-
edged as provided for in the law relating to the execution of
deeds of conveyance by the party or parties obligated to pay
such indebtedness as extended and filed for record in the county
clerk's office in the county in which the land is situated, the
lien shall continue and be in force until four years after ma-
turity of the notes as provided in such extension, the same as
in the original contract and the lien shall so continue for any
succeeding or additional extension so made and recorded. * * "

The foregoing article contains certain exceptions to the gen-
eral rule. Article 5522 also provides:

" * * the owner of the land and the holder of the note or
notes may at any time enter into a valid agreement renewing
and extending the debt and lien, so long as it does not prejudice
the rights of lien holders or purchasers subsequent to the date
such liens became barred of record under laws existing prior
to the taking effect of, or under this Act, * * "

The primary objects of this article appear to be: (1) To
protect a purchaser or lien holder for value and without notice
from a prior lien upon land, when it appears from the record
that such note or notes for which a prior lien was given are
barred by limitation; and. (2) not to protect the lien holder
who acquires a lien with full knowledge of a valid existing prior
lien, then in full force, from a renewal and extension of such
prior lien by the owner of the land, although such renewal and
extension may be executed either before or after such prior
lien appears to be barred by limitation. It clearly appears from
this record that Svrcek does not come under the protection of
the exception furnished by this article, and his rights were not
prejudiced by the renewal and extension by Knippel of the notes
held by the Novosads. For a full discussion of the legislative
history of Article 5522 and its background we refer to the fol-
lowing cases: T. A. Hill State Bank of Weimar et al. v. Schind-
ler et al., supra; Watson et al. v. First Nat. Bank of Coleman,
supra; Wilkinson v. First Nat. Bank of Crosbyton, supra.

The judgments of the trial court and Court of Civil Appeals
are both reversed, and this cause is remanded to the trial court
for further proceedings in accordance with this opinion.

Opinion delivered February 24, 1937.