**MARTIN v. THAXTON et al.**

No. 9963.

Court of Civil Appeals of Texas. San Antonio.

March 10, 1937.

Rehearing Denied April 7, 1937.

Carl Runge and Glenn Capps, both of Mason, for appellant.

White, Taylor & Gardner, of Austin, for appellees.

SMITH, Chief Justice.

This appeal involves and is determinable by a decision of the question of the priority of deed of trust liens upon two certain tracts of land in Mason county.

On March 19, 1918, R. D. Kiser executed and delivered his promissory note for $2,500, payable to Mrs. Mary Ann Leslie, and at the same time executed and delivered his deed of trust upon said land to secure said note. This deed of trust was forthwith recorded.

In due course the note and lien were extended by agreement to March 19, 1927. This extension agreement was forthwith recorded.

Mrs. Leslie, the holder of the note and lien, died, and Miss Mackie Leslie became the administratrix of her estate.

In due course, the note and lien were again duly extended, by agreement between the administratrix and the mortgagor, to March 19, 1932. This agreement was not recorded, however, until September 29, 1934.

Subsequently, the administratrix sold and transferred the note and lien to Fritz Martin, appellant herein, for a valuable consideration. This transfer was not recorded until September 29, 1934.

Thereafter, on March 31, 1932, Kiser, the owner of the land, executed his deed of trust upon said land, with other tracts, to secure his note of that date to Mrs. Emily Thaxton, for $4,454.08. At that time, by virtue of the last extension agreement, the lien of appellant, Martin, was in full force and effect, as between the mortgagor and mortgagee. That extension agreement, however, was not of record. But the jury found in this case that when Mrs. Thaxton, acquired the later lien upon the land, her son (who was acting for her in the transaction) "had knowledge of such facts or conditions as would have put a person of ordinary intelligence and prudence upon notice of the existence, if any, of the lien held by Fritz Martin," the then holder of that existing lien.

It appears, as stated, that Miss Mackie Leslie was administratrix of the estate of Mrs. Mary Ann Leslie, deceased; that the latter was the original payee and holder of the note and lien executed by R. D.

Kiser and afterwards acquired by appellant, Martin; that Miss Leslie, as such administratrix, sold and transferred such note and lien to appellant, for a valuable consideration. It further appears that in a report made to the probate court in 1929, by Miss Leslie, it was erroneously recited that she, as administratrix, "collected" the amount of said note, "and executed lawful release for lien securing same on real estate described in said order"; whereas, the undisputed evidence shows, and it is conceded by all parties, that the note was not in fact paid off, or the lien released by the administratrix, but, on the contrary, was purchased by Martin, and transferred to him by the administratrix.

On February 28, 1935, Mrs. Thaxton (and others) mortgagee in the second deed of trust, filed this suit against the surviving widow and heirs of Kiser, the deceased mortgagor in both deeds of trust, to recover the amount of the note payable to and held by her, and for foreclosure of the deed of trust lien held by her upon said land. Martin, the holder of the earlier note and lien, was also made a party defendant, and foreclosure was sought against him, as well, upon the claim that his lien was inferior to the subsequently acquired Thaxton lien.

A few days after this suit was filed, on March 5, 1935, Martin, holder of the earlier note and deed of trust lien, caused the land to be sold under the power given in that deed of trust, and purchased the land at that sale, and had his deed from the trustee promptly recorded. In this suit Martin prays that he be quieted in his title thus acquired in said land.

As will be observed from what has been stated from the record, the lien held by Martin upon the tract here involved had been retained by him through extension agreements, and, as between the parties thereto, was in full force and effect when Mrs. Thaxton acquired her lien upon the same tracts, with others. But, the last of those extension agreements, which projected Martin's lien beyond the date Mrs. Thaxton acquired her lien, was not of record at that date.

The jury found, in effect, however, as before stated, that at the time Mrs. Thaxton acquired her lien Lamar Thaxton (her son and agent in the transactions) had notice of facts sufficient to put him upon inquiry, which, if reasonably pursued, would have discovered to him the the present existence of Martin's lien.

The trial judge rendered judgment, non obstante veredicto, establishing the priority of the Thaxton lien, and foreclosing the same against the defendants below, including Martin, who alone has appealed.

The question which controls the appeal, then, is whether the Martin lien, or the Thaxton lien, is the superior encumbrance, under the case-made.

The record shows that Judge Lamar Thaxton represented himself and the other appellees, including his mother, Mrs. Emily Thaxton, in the transactions involved in this suit. It further appears that before acquiring the lien upon the land involved he examined the real estate records, and the probate records of the county, with reference to the title to said land. This examination of the probate records disclosed the recital in the report of the administratrix of the estate of Mrs. Leslie, original mortgagee in the deed of trust now relied upon by appellant, Martin, that the debt secured by said deed of trust had been "collected," and the mortgage lien released. Judge Thaxton's examination of the real estate records disclosed that Mrs. Leslie acquired a deed of trust lien upon the property in 1918; that the debt and lien had been extended, in 1926, to mature on March 19, 1927, and that said lien had not been again renewed of record, or released of record. In the light of this information, Judge Thaxton prepared the papers (to be executed by R. D. Kiser, the prospective mortgagor) incident to fixing a lien upon the land, to secure existing obligations owing to appellees by Kiser, the owner of the land, and future advances, in the way of rents. When Kiser came to town, accompanied by his son, Frank Kiser, to execute the deed of trust and note, he met Judge Thaxton on the street, and, according to the testimony of Frank Kiser, the following conversation occurred between R. D. Kiser and Judge Thaxton. Frank Kiser testified:

"Q. What conversation took place between your father and Lamar Thaxton that you heard? * * * A. My father told Thaxton that he didn't want to sign these papers without notifying Fritz Martin, or talking to him about it and Judge Thaxton told him that his papers had run out, that there wasn't anything on record about it, that there wasn't any use to be worried

about Fritz Martin's papers, because it was run out of date. I believe that was about all that they talked about the papers there.

"Q. Did Judge Thaxton say anything about whether he had looked into the records or not? A. He told him that there wasn't any record showing that Fritz Martin had the lien on his land out there.

"Q. How long had your father been owing Fritz Martin this money? * * * Did your father say anything about whether he wanted to see Fritz Martin paid first? A. He told him that he wanted to pay Fritz, that that was a valid lien and that he wanted to pay it.

"The Court: He said what? A. He said that was a valid lien and note, and that he had borrowed the money and that he wanted to pay him back.

"Q. And what was it that Judge Thaxton said then? A. He told him that there wasn't anything on record about it.

"Q. About the Fritz Martin lien? A. Yes, sir, about the Fritz Martin lien. * * *

"The Court: I didn't understand what your father told Judge Thaxton about the lien, what was that? A. He told him that he owed Mr. Martin this money, and that he wanted to pay him.

"The Court: That he owed Mr. Martin some money and that he wanted to pay him, was that all he said? A. Yes, sir, that he had a lien on this land out there.

"The Court: That Mr. Martin had a lien on this land? A. Yes, sir.

"Q. That is the land that is in controversy here? A. Yes, sir."

We are of the opinion that this testimony was sufficient to sustain the jury finding that Judge Thaxton had notice of facts sufficient to put a person of ordinary "intelligence and prudence" upon inquiry, which, if pursued, would have disclosed the fact that appellant, Martin, then held a valid, existing lien upon the land involved in this controversy.

■ It must be conceded that the last extension of the lien here asserted by appellant, Martin, was valid, as between the parties to it, even if never recorded; that the purpose of the statute providing for registration of such extension agreements was to protect persons subsequently acquiring an interest in the security, without notice of such extension. Article 5522

(Acts 1925, 39th Leg. p. 216, ch. 64, § 2); article 6627, R.S.1925; 29 Tex.Jur., "Mortgages," §§ 62, 65, 66; Wilkinson v. First Nat. Bank, 118 Tex. 202, 13 S. W.(2d) 346; Hill State Bank v. Schindler (Tex.Civ.App.) 33 S.W.(2d) 833, and authorities there cited.

■ Such notice may be constructive, determinable as a matter of law; or by actual notice, determinable as a matter of fact; or by knowledge of such facts as put a person of ordinary prudence upon inquiry, which, if reasonably pursued, would disclose the existence of the unrecorded encumbrance, which issue is likewise determinable as a matter of fact. 29 Tex.Jur. p. 860, § 54, and authorities cited.

■ In this case the jury found, in effect, upon sufficient evidence, that appellees' agent had notice of such facts as put him upon inquiry, which, if reasonable pursued, would have disclosed to him the fact of appellant's existing lien. Such finding had the effect, under the authorities cited, of defeating appellees' plea of innocent purchaser, thereby establishing the priority of appellant's existing lien, even though the extension thereof was not of record. Wilkinson v. First Nat. Bank, supra. The trial judge therefore erred in rendering judgment for appellees, notwithstanding that finding. This conclusion requires reversal.

In order to avoid rendition, in event of reversal, appellees have briefed seven cross-assignments of error in one group. As each of the seven assignments presents a different question for decision, and all are briefed together under one statement and argument, none may be considered under the rules for briefing. We have, nevertheless, considered all of them, and conclude that none presents reversible error. They are all, therefore, overruled.

Accordingly, the judgment will be reversed, and judgment here rendered that appellees take nothing in their suit against appellant, and pay all costs incurred by reason of his presence in the suit, and that appellant be quieted in his title to said land by reason of his purchase thereof at trustee's sale made under power conferred upon said trustee in the deed of trust held by appellant; and that appellees recover of the defendants below other than appellant the amount of the money judgment recovered of them below, without foreclosure of appellees' asserted lien upon

**880**

said land, and that appellees pay all costs of appeal.

Reversed and rendered.