The CADLE COMPANY, Appellant,

v.

Ray BUTLER, Appellee.

No. 13–94–495–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 21, 1997.

Rehearing Overrulrd Sept. 25, 1997.

C.M. Henkel, III, Henkel, Hyden & Sanders, Corpus Christi, for Appellant.

Jeffrey J. Zissa, Gregory K. Esmon, Oden & Zessa, Alice, for Appellee.

Before DORSEY, FEDERICO G. HINOJOSA, Jr., and YANEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

Ray Butler sued The Cadle Company for a declaratory judgment that his deed of trust lien was superior to a judgment lien obtained by Cadle, or alternatively, for a finding that Cadle was not a good faith purchaser of the real property affected by the lien, and for reimbursement of an insurance premium. Cadle counterclaimed and asked the trial court to declare that its judgment lien was superior. Both parties moved for summary judgment. The trial court granted Butler's motion and denied Cadle's motion. By two points of error, Cadle contends that the trial

court erred (1) by failing to grant its motion for summary judgment and (2) by granting Butler's motion. We reverse the trial court's judgment and render summary judgment for Cadle.

On November 19, 1987, Harold Weakly and Jane Weakly executed and delivered to Ray Butler a $200,000.00 promissory note that would mature on November 19, 1988. The note was secured by a deed of trust on two lots, lots 35 and 36, in Block "C" of Carmel Hills Estates, Unit III Subdivision, in Live Oak County, Texas. The deed of trust was properly recorded in Live Oak County on December 18, 1987. The deed did not recite the maturity date of the note, which was not recorded.

On March 28, 1993, the U.S. District Court for the Southern District of Texas granted Cadle a default judgment against the Weaklys for $125,474.60, together with pre-judgment and post-judgment interest and attorney's fees. In the judgment, Cadle was authorized to foreclose on a deed of trust lien it held on lots 37 through 42 in Block "C" of Carmel Hills Estates, Unit III Subdivision. These lots were owned by the Weaklys. The judgment also ordered that an order of sale be issued ordering the U.S. Marshal to seize and sell the lots in satisfaction of the judgment. Cadle abstracted the judgment in Live Oak County on May 12, 1993. The U.S. District Court issued an order of sale for lots 37, 38, 39, 40, and 42 on May 24, 1993, and the U.S. Marshal executed the order of sale on July 8, 1993. Cadle bought the properties at the U.S. Marshal's sale for $52,000.

The lots at issue in the instant case are lots 35 and 36, which lie adjacent to those described in the order of sale. In addition to expressly authorizing the sale of lots 37 through 42, the default judgment provided that "if the proceeds of the sale are insufficient to satisfy the judgment, the United States Marshal shall take any money or unpaid balance out of any other property of the Defendants, as in the case of ordinary executions." The record reflects that, apart from the land at issue (lots 35 and 36), the Weaklys have no other assets subject to execution to satisfy the deficiency remaining after the sale of lots 37, 38, 39, 40, and 42.

On October 30, 1993, Butler and the Weaklys executed a written modification agreement to the note and deed of trust and recorded it in Live Oak County on November 2, 1993. On November 4, 1993, Cadle deposed Butler and learned, apparently for the first time, that Butler's note had a maturity date of November 19, 1988. At the deposition, Cadle also learned that from 1988 to 1993 the Weaklys and Butler had orally agreed each year to extend the maturity date of the note one additional year.

Cadle obtained a writ of execution to satisfy the judgment, and the U.S. Marshal sold lots 35 and 36 to Cadle for $1,000 on November 10, 1993. On June 9, 1994, Butler filed this suit for declaratory judgment. On June 14, 1994, Cadle counterclaimed and asked the trial court to declare that its judgment lien was superior. Both parties moved for summary judgment. On September 26, 1994, the trial court granted Butler's motion and denied Cadle's motion. Cadle promptly perfected its appeal to this court.

When both parties move for summary judgment and one motion is granted and the other is overruled, the appellate court should consider all questions presented to the trial court, including whether the losing party's motion should have been overruled. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). Each party must carry its own burden as the movant and, in response to the other party's motion, as the non-movant. *James v. Hitchcock Indep. Sch. Dist.,* 742 S.W.2d 701, 703 (Tex.App.—Houston [1st Dist.] 1987, writ denied). To prevail, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Guynes v. Galveston County,* 861 S.W.2d 861, 862 (Tex.1993). When both parties move for summary judgment, this court has the authority to (1) affirm the judgment, (2) reverse the judgment and render the judgment that the trial court should have rendered, or (3) reverse the judgment and remand the case to the trial court for further proceedings. *Members Mut. Ins. Co. v. Hermann Hosp.,* 664 S.W.2d 325, 328 (Tex.1984).

■ Butler was the plaintiff below and Cadle the defendant/counter-plaintiff. Each moved for summary judgment. In a summary judgment proceeding, the plaintiff, as movant, must conclusively prove his entitlement to prevail on each element of his cause of action as a matter of law. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). A defendant who seeks summary judgment has the burden of showing that (1) as a matter of law there remains no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action or (2) he has established his affirmative defense to the plaintiff's cause of action as a matter of law. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Swilley*, 488 S.W.2d at 67. Once the movant establishes an affirmative defense which would bar the suit as a matter of law, the non-movant must then produce summary judgment proof raising a fact issue in avoidance of the affirmative defense. *Gonzalez v. City of Harlingen*, 814 S.W.2d 109, 112 (Tex. App.—Corpus Christi 1991, writ denied).

■ In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant must be taken as true. *Nixon*, 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Id.* When a party moves for summary judgment on several theories and the trial court enters summary judgment without specifying the ground relied upon, we affirm the summary judgment if any one of the theories advanced is meritorious. *Martinez v. Corpus Christi Area Teachers Credit Union*, 758 S.W.2d 946, 950 (Tex.App.—Corpus Christi 1988, writ denied).

## CADLE'S MOTION FOR SUMMARY JUDGMENT

### Limitations

Cadle argues in its motion for summary judgment that Butler's lien was barred by limitations before Cadle's judgment lien attached, rendering the subsequent attempted extension of Butler's lien ineffective. Cadle presents little argument and no citations in its motion for summary judgment. However, the limitations defense presented by Cadle coupled with the facts of the case establish that sections 16.035,[1] 16.036,[2] and 16.037[3] of

---

1. Section 16.035 states, in relevant part, as follows:
§ 16.035. Lien Debt on Real Property.
(a) A person must bring suit for the recovery of real property under a lien debt or the foreclosure of lien debt not later than four years after the day the cause of action accrues
(c) The running of the statute of limitation is not suspended against a bona fide purchaser for value, a lienholder, or a lessee who has no notice or knowledge of the suspension of the limitations period and who acquires an interest in the property when an outstanding lien debt is more than four years past due, except as provided by:
(2) Section 16.036, providing for recorded extensions of lien debts.
(d) On the expiration of the four-year limitations period, it is conclusively presumed that a lien debt has been paid and the lien debt and a power of sale to enforce the lien become void at that time.
(f) In this section, "lien debt" means:
(2) a vendor's lien, a mortgage, a deed of trust, a voluntary mechanic's lien, or a voluntary materialman's lien on real estate, securing a note or other written obligation.
TEX. CIV. PRAC. & REM.CODE ANN. § 16.035 (Vernon 1997).

2. Section 16.036 states as follows:

§ 16.036. Extension of Lien Debt.
(a) The party or parties primarily liable for a lien debt, as that term is defined in Section 16.035, may suspend the running of the four-year limitations period for lien debts through a written extension agreement as provided by this section.
(b) The limitations period is suspended and the lien remains in effect for four years after the extended maturity date of the note if the extension agreement is:
(1) signed and acknowledged as provided by law for a deed conveying real property; and
(2) filed for record in the county clerk's office of the county where the real property is located.
(c) The parties may continue to extend the lien by entering, acknowledging, and recording additional extension agreements.
(d) The maturity date stated in the original instrument or in the date of the recorded renewal is conclusive evidence of the maturity date of the debt.
TEX. CIV. PRAC. & REM.CODE ANN. § 16.036 (Vernon 1997).

3. Section 16.037 states as follows:
§ 16.037. Effect of Extension of Lien Debt on Third Parties.
An extension agreement is void as to a bona fide purchaser for value, a lienholder, or a

the Texas Civil Practice and Remedies Code are the applicable statutes. These statutes provide for the time bar of lien debt by prescribing the period within which an action may be brought and for means to suspend the running of limitations.

■■■■■ In their appellate briefs, Cadle and Butler expressly rely upon sections 16.035 and 16.036 and make no references to section 16.037. A primary and principal rule of statutory construction is that legislative enactments which are involved with the same general subject matter and also possess the same general purpose or purposes are considered to be and are construed to be *in pari materia*.[4] *See* TEX. GOV'T CODE ANN. § 312.005 (Vernon 1997); *Garrett v. Mercantile Nat'l Bank,* 140 Tex. 394, 168 S.W.2d 636, 637 (1943); *see also Calvert v. Fort Worth Nat'l Bank,* 163 Tex. 405, 356 S.W.2d 918, 921 (1962). Such statutes are *in pari materia* even though these statutes may fail to contain any reference in one to the other

and even though the statutes may have been passed at different times or at different legislative sessions. *Wintermann v. McDonald,* 129 Tex. 275, 102 S.W.2d 167, 171 (1937); *Reed v. State Dept. of Licensing & Regulation,* 820 S.W.2d 1, 2 (Tex.App.—Austin 1991, no writ). The purpose of the *in pari materia* rule of construction is to fulfill the legislative intent. *Crimmins v. Lowry,* 691 S.W.2d 582, 584 (Tex.1985); *Lenhard v. Butler,* 745 S.W.2d 101, 105 (Tex.App.—Fort Worth 1988, writ denied); *Texas & N.O.R. Co. v. W.A. Kelso Bldg. Material Co.,* 250 S.W.2d 426, 430 (Tex.Civ.App.—Galveston 1952, writ ref'd n.r.e.).

■■■■■ Sections 16.035, 16.036, and 16.037 have not previously been interpreted in a situation similar to that of the instant case. However, the history of these statutes clearly shows that they are codifications of Texas Revised Civil Statutes 5520[5] and 5522.[6] A revision or recodification of law is

---

lessee who deals with real property affected by a lien debt without actual notice of the agreement and before the agreement is acknowledged, filed, and recorded. TEX. CIV. PRAC. & REM.CODE ANN. § 16.037 (Vernon 1997).

4. According to Black's Law Dictionary, "statutes *in pari materia* are to be construed together." BLACK'S LAW DICTIONARY 711 (5th ed.1979). " 'Statutes *in pari materia*' are those relating to the same person or thing or having a common purpose." *Id.*

5. Article 5520 stated, in relevant part, as follows:
Art. 5520. Actions by vendors and on voluntary mechanic's or materialman's lien; tolling; presumption of payment.
All actions for the recovery of real estate by virtue of a superior title retained by the vendor in a deed of conveyance or purchase money note, or for the foreclosure of any vendor's, mortgage, deed of trust or voluntary mechanic's or materialman's lien on real estate, securing a note or other written obligation, shall be instituted, and all sales of real estate in the exercise of a power of sale under a mortgage or deed of trust securing any such lien debts shall be made, within four (4) years after the cause of action shall have accrued, and not afterward.
No time shall be counted out by a toll of limitations under any other Statutes ... in calculating any aforesaid limitation period invoked by a bona fide purchaser, lien holder or lessee who has no notice or knowledge of any such toll of limitations and acquires his interest in the property at a time when any said lien debt is more

than four (4) years past due and there is no written extension of record.
At the expiration of such four (4) year period payment of any such lien debt shall be conclusively presumed to have been made, and the lien for the security of same and any power of same for the enforcement thereof shall be void and cease to exist, unless said lien is extended by written agreement of the party or parties primarily liable for the payment of the indebtedness, as provided by law; but any such extension agreement shall be a nullity against aforesaid bona fide third persons dealing with said property without actual notice thereof and before same is filed and recorded in the manner provided for the acknowledgment and record of conveyances of real estate.
Acts 1945, 49th Leg., ch. 278, 1945 TEX. GEN. LAWS 441, *repealed by* Act of June 16, 1985, 69th Leg., R.S., ch. 959, § 9, 1985 TEX. GEN. LAWS 3242, 3322 (currently codified as TEX. CIV. PRAC. & REM.CODE ANN. §§ 16.035–16.037 (Vernon 1997)).

6. Article 5522 stated, in relevant part, as follows:
Art. 5522. Lien continued in force.
When the date of maturity of either debt referred to in either of the foregoing articles is extended, if the contract of extension is signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance by the party or parties obligated to pay such indebtedness as extended and filed for record in the county clerk's office in the county in which the land is situated, the lien shall continue and be in force until four years after maturity of the notes as provided in such extension, the same as

to be construed as a continuation of previously existing law. *Hartford Fire Ins. Co. v. Walker*, 94 Tex. 473, 61 S.W. 711, 711–13 (1901); *G.P. Show Prods., Inc. v. Arlington Sports Facilities Dev. Auth., Inc.*, 873 S.W.2d 120, 122 (Tex.App.—Fort Worth 1994, no.writ) (a mere change of phraseology in the revision of a statute in force before will not change the law previously declared, unless it indisputably appears the legislature intended change). A comparison of the language in articles 5520 and 5522 reveals that they are substantially reproduced in sections 16.035, 16.036, and 16.037. *Compare* Tex. Rev.Civ. Stat. Ann. arts. 5520 & 5522 (Vernon 1958) *with* Tex. Civ. Prac. & Rem.Code Ann. §§ 16.035–16.037 (Vernon 1997). When the wording and the language in the recodification is substantially the same, it should be held that it conveys the same intent and meaning as its predecessors. *See Walker v. Money*, 132 Tex. 132, 120 S.W.2d 428, 431 (1938) (courts cannot presume an intention to change the statute when the language in the revision has the same meaning as that prior to the revision); *Texon Amusements v. State*, 90 S.W.2d 871, 871 (Tex.Civ.App.—Fort Worth 1936, no writ). Reenactment and recodification are strongly and compellingly persuasive indicators that the legislative intent was the continuation of the prior law. *Deep East Texas Regional Mental Health & Mental Retardation Serv. v. Kinnear*, 877 S.W.2d 550, 562–63 (Tex.App.—Beaumont 1994, no writ). We, therefore, look to the case law interpreting the statutory predecessors of sections 16.035 through 16.037 for guidance in their correct interpretation.

Cadle contends that Butler's action for declaratory judgment is barred by limitations. From the applicable statutes we can derive the elements of Cadle's affirmative defense. Cadle's evidence must show (1) that it is a lienholder; (2) that Butler's lien matured at least four years before Cadle's lien attached; and (3) that there was no notice of a suspension of the limitations period before Cadle's lien attached.

■ The Property Code provides that an abstract of judgment recorded and indexed in the county where the defendant owns property constitutes a lien on the property. Tex. Prop.Code Ann. § 52.001 (Vernon 1995); *Woodward v. Jaster*, 933 S.W.2d 777, 780–81 (Tex.App.—Austin 1996, no writ); *Sarny Holdings, Ltd. v. Letsos*, 896 S.W.2d 274, 276 (Tex.App.—Houston [1st Dist.] 1995, writ denied). When Cadle recorded its abstract of judgment in May 1993, it became a lienholder and its interest attached to the Weaklys' property in Live Oak County. *Hughes v. Hess*, 141 Tex. 511, 172 S.W.2d 301, 304 (Tex.1943) (lienholder's rights originated when abstract of judgment was filed).

Butler contends that because the deed of trust contains no maturity date, the deed of trust could mature only when the underlying promissory note matured. He also contends that the only instrument defined as lien debt under section 16.035(f) is the deed of trust, which, therefore, must be considered the "original instrument" subject to extension by written agreement under section 16.036. Butler argues that the deed of trust could not activate the four-year statute of limitations because it lacked a maturity date on its face and could only mature incident to the promissory note, the maturity of which was extended by oral agreement.

■ It is well-established in Texas law that separate instruments executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be

in the original contract and the lien shall so continue for any succeeding or additional extension so made and recorded. The date of maturity set forth in the deed of conveyance or deed of trust or mortgage, or the recorded renewal and extension of the same shall be conclusive evidence of the indebtedness therein mentioned. Provided the owner of the land and the holder of the note or notes may at any time enter into a valid agreement renewing and extending the debt and lien, so long as it does not prejudice the rights of lien holders or purchasers subsequent to

the date such liens became barred of record ...; as to all such lien holders or purchasers any renewal or extension executed or filed for record after the note or notes and lien or liens were, or are, barred of record and before the filing for record of such renewal or extension, such renewal or extension shall be void.
Acts 1925, 39th Leg., ch. 64, § 2, 1925 Tex. Gen. Laws 216, *repealed by* Act of June 16, 1985, 69th Leg., R.S., ch. 959, § 9, 1985 Tex. Gen. Laws 3242, 3322 (currently codified as Tex. Civ. Prac. & Rem. Code Ann. §§ 16.035–16.037 (Vernon 1997)).

read and construed together. *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex.1981); *Miles v. Martin*, 159 Tex. 336, 321 S.W.2d 62, 65 (1959); *Veal v. Thomason*, 138 Tex. 341, 159 S.W.2d 472, 475 (1942); *Braniff Inv. Co. v. Robertson*, 124 Tex. 524, 81 S.W.2d 45, 50 (1935). The promissory note and deed of trust were executed on the same date by identical parties and identify the same subject matter. Each instrument expressly references the other and the deed of trust is identified as security for the note; the instruments are not separable. A party wishing to calculate the maturity date of the deed of trust would have to look to the promissory note referred to in the deed of trust.[7] Therefore, the note and the deed of trust are essentially one instrument and must be construed together. *Jones*, 614 S.W.2d at 98; *Starcrest Trust v. Berry*, 926 S.W.2d 343, 351–52 (Tex.App.—Austin 1996, no writ).

Furthermore, the definition of lien debt provided in section 16.035(f) makes it clear that a lien debt has two components: a written obligation and a security instrument. Section 16.036(b) refers to "the extended maturity date of the *note*" in regards to suspension of the running of limitations. (emphasis added). The Legislature obviously intended "original instrument" to refer to the underlying debt instrument as well as the security instrument. We conclude that the maturity date of the deed of trust is the same as that of the promissory note and both instruments are subject to the applicable statutes cited above.

The former and current statutes plainly state that parties to a lien debt can suspend the running of the statute of limitations only by executing and recording a written extension agreement. *See* TEX.REV.CIV. STAT. ANN. art. 5522 (Vernon 1958) (repealed 1985; currently codified as TEX. CIV. PRAC. & REM.CODE ANN. §§ 16.036 & 16.037 (Vernon 1997)). The Texas Supreme Court has declared that if a *bona fide* third person acquires his interest in the property when no renewal or extension agreements are recorded and the lien debt appears to be four years past due, such agreements are void as against that person. *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 582 (Tex.1984) (judgment lienholder who acquired his interest when prior lien was valid of record is not a *bona fide* third person); *Hughes*, 172 S.W.2d at 304 (abstract of judgment lien filed before prior lien barred of record rendered judgment creditor disqualified as *bona fide* third person); *see also* TEX.REV.CIV. STAT. ANN. art. 5522 (Vernon 1958) (repealed 1985; currently codified as TEX. CIV. PRAC. & REM.CODE ANN. §§ 16.035–16.037 (Vernon 1997)).

Under article 5522, now section 16.036, where there is no recorded renewal or extension, the maturity date stated in the original instrument is conclusive evidence of the maturity date of the debt. *See* TEX.REV. CIV. STAT. ANN. art. 5522 (Vernon 1958) (repealed 1985); TEX. CIV. PRAC. & REM.CODE ANN. § 16.036(d) (Vernon 1997). Four years from that date, it is conclusively presumed that the lien debt is paid. *See* TEX.REV.CIV. STAT. ANN. art. 5520 (Vernon 1958) (repealed 1985); TEX. CIV. PRAC. & REM.CODE ANN. § 16.035(d) (Vernon 1997). The effect of such conclusive presumption of payment, like the effect of actual payment, is to terminate the superior title retained by the vendor, and consequently to terminate all remedies for the enforcement of such superior title. *Yates v. Darby*, 133 Tex. 593, 131 S.W.2d 95, 99 (Tex. Comm'n App.1939, opinion adopted). A *bona fide* third person is entitled to the statutory presumption that the debt was paid and that the lien became void and ceased to exist. *Mercer*, 676 S.W.2d at 582; *see also First Nat. Bank v. Gamble*, 134 Tex. 112, 132 S.W.2d 100, 103 (1939); *Yates*, 131 S.W.2d at 99; *Jasper State Bank v. Braswell*, 130 Tex. 549, 111 S.W.2d 1079, 1085 (Tex. Comm'n App.1938, opinion adopted).

---

**7.** No Texas court has previously been presented with a deed of trust lacking a date of maturity, although the practice is common in Texas, as Texas law does not require maturity dates of underlying debts to be reflected in security instruments. Courts in sister states have held that if the deed references another instrument, that instrument may be relied upon to calculate the date of maturity as if the date was recited in the deed itself. *See, e.g., Gebrüeder Heidemann, K.G. v. A.M.R. Corp.*, 107 Idaho 275, 688 P.2d 1180, 1186 (1984); *accord, McCray v. Twitchell*, 112 Idaho 787, 735 P.2d 1098, 1101 (1987).

Both Butler and Cadle agree that the stated date of maturity on the face of the promissory note was November 19, 1988 and that the written extension of the debt was not recorded until November 2, 1993, almost five years after the debt's original due date. When Cadle's lien attached on May 12, 1993, the only instrument evidencing the maturity date of the debt was the promissory note. As section 16.036 provides that this date is conclusive, TEX. CIV. PRAC. & REM.CODE ANN. § 16.036(d) (Vernon 1997), we conclude that November 19, 1988, is the date when limitations began to run. Section 16.035 provides a four-year statute of limitations for enforcement of lien debt. TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a) & (d) (Vernon 1997). We conclude that the four-year limitations period expired on November 19, 1992.

Oral extensions of a debt's maturity are valid and enforceable between the parties to the agreement. *C. & G. Coin Meter Supply Corp. v. First Nat'l Bank in Conroe,* 413 S.W.2d 151, 154 (Tex.Civ.App.— Eastland 1967, writ ref'd n.r.e.); *Mizell Construc. Co. & Truck Line, Inc. v. Mack Trucks, Inc.,* 345 S.W.2d 835, 837–38 (Tex. Civ.App.—Houston 1961, no writ ); *see also McNeill v. Simpson,* 39 S.W.2d 835, 836 (Tex. Comm'n App.1931, holding approved); *Maceo v. Doig,* 558 S.W.2d 117, 119 (Tex.Civ. App.—Austin 1977, writ ref'd n.r.e.). Such agreements are enforceable between the parties despite their failure to comply with statutory provisions, *Yates,* 131 S.W.2d at 101, but extensions are binding against subsequent lienholders only if the prior lien did not appear to be barred of record when the later lien was acquired. *Mercer,* 676 S.W.2d at 582; *see also Hughes,* 172 S.W.2d at 304.

Although the parties agree that Cadle had no notice of the oral agreements prior to May 1993, Butler contends that Cadle could have acquired notice of the oral extensions of Butler's lien. In essence, Butler argues that if Cadle had examined the deed of trust, which contains no date of maturity for the underlying promissory note, and then inquired about the promissory note, Butler would have had the opportunity to inform Cadle of his orally extended outstanding lien, thus frustrating Cadle's efforts to acquire a valid, superior lien on the Weaklys' property. Butler argues that the ability to discover the existence of an oral extension of a lien is sufficient to fulfill the notice requirements of sections 16.035 through 16.037.

The case of *Martin v. Thaxton* would seem to support Butler's position. In 1918, M.A. Leslie advanced a loan to R.D. Kiser in exchange for a promissory note secured by a deed of trust on two tracts of land, which was recorded in Mason County. 103 S.W.2d 877, 877 (Tex.Civ.App.—San Antonio 1937, writ dism'd). In due course, the note and lien were extended by agreement to mature on March 19, 1927; the extension agreement was recorded in Mason County. *Id.* Sometime in 1931, Kiser and Leslie agreed to extend the note and lien to March 19, 1932. *Id.* Later in 1932, Leslie sold and transferred the note and lien to F. Martin. *Id.* Neither transaction was recorded until September 29, 1934. *Id.* On March 31, 1932, Kiser executed a second deed of trust on the tracts to secure a promissory note given to Thaxton. *Id.* Prior to executing the second deed of trust, Thaxton performed a title search on the tracts. *Id.* at 878. He examined the 1918 deed of trust lien and its extension of maturity to 1927; no further renewals were recorded. *Id.* Thaxton proceeded to execute his lien. *Id.* On February 28, 1935, Thaxton filed suit to foreclose on the deed of trust. *Id.* On March 5, 1935, the original trustee exercised his power under the original deed of trust and sold the property to Martin. *Id.* Martin thereafter asserted that he held a superior title by virtue of his purchase of the property and filed suit to quiet his title. *Id.*

At trial on the merits, Kiser's son testified that Thaxton had acquired knowledge of Martin's lien on the day Thaxton's note and deed of trust were to be executed and before the signings took place. *Id.* at 878. Thaxton had met Kiser who orally informed him that Martin held a lien on Kiser's property. *Id.* at 878–79. Thaxton told Kiser that his search of the title had revealed no extension or transfer of the debt on record and the statute of limitations had run on what he did find, so as far as he was concerned, Martin's lien was invalid. *Id.* Despite the passage of more than four years since the prior lien's

maturity date of record and Martin's failure to record the transfer or extension agreements before Thaxton recorded his deed of trust, Thaxton nonetheless had acquired sufficient notice of the prior interest to merit further inquiry. *Id.* at 878–79. For that reason, the court found, Thaxton was not an "innocent purchaser" and did not qualify for the protection of article 5522. *Id.* at 879.

In 1937, the notation "writ dismissed" meant only that the Texas Supreme Court lacked jurisdiction to hear a writ of error. *Wood v. Bankers Life & Loan Ass'n of Dallas,* 132 Tex. 505, 125 S.W.2d 262, 262 (1939). The court could have dismissed the writ with the additional notation "judgment correct," indicating that the court approved of the lower court's decision, but not all aspects of its reasoning. *Republic Ins. Co. v. Highland Park Indep. Sch. Dist.,* 133 Tex. 545, 125 S.W.2d 270, 270 (1939). As the court did not do so, we perceive a tacit disapproval of the appellate court's decision underlying the unembellished dismissal of the writ. For this reason, we believe *Martin* has little or no precedential value.

Two years after *Martin,* the Commission of Appeals issued its opinion in a case factually comparable to the instant case. *Yates v. Darby* concerned the question of which of two liens on the same real property was superior. 103 S.W.2d 1007 (Tex.Civ.App.— Beaumont 1937), *aff'd,* 133 Tex. 593, 131 S.W.2d 95 (Tex. Comm'n App.1939, opinion adopted). On December 25, 1919, Yates conveyed three lots of real property to Jones in exchange for a vendor's lien note which would mature on May 5, 1926. *Yates,* 103 S.W.2d at 1007. Jones recorded the warranty deed which recited the existence of the vendor's lien. *Id.* In 1924, Jones conveyed the lots to Peter Smith, who assumed Jones' obligations on the note and recorded his deed. *Id.* On May 5, 1926, a substantial balance remained outstanding on the vendor's lien note; Smith did not pay it nor was the note discharged. *Id.* at 1008. Smith and Yates made no agreements to extend or renew the note before May 6, 1930, when the four-year limitation of article 5522 barred Yates' lien. *Id.*

On August 17, 1932, Darby obtained a judgment against Smith and abstracted the judgment. *Id.* Yates and Smith subsequently renewed Smith's obligation. *Id.* In 1933, Yates reacquired the property from Smith in satisfaction of the original debt. *Id.* Darby brought suit to establish the superiority of his judgment lien and to foreclose on the property. *Id.* Yates argued that his earlier lien was superior because the property was pledged as security for the purchase money note cited in the warranty deed. *Id.* The trial court ruled that Darby's judgment lien was superior and Yates appealed. *Id.*

The appellate court held that Yates' lien had ceased to exist by operation of law as it appeared of record to be barred by limitation and no extensions or renewals had been executed and recorded in compliance with article 5522. *Id.* at 1009. Yates argued that even though he and Smith did not renew the note in writing until more than four years after the debt's maturity date, the eventual renewal continued the note in force and thus kept it superior against all persons "except those who allege and prove that they were innocent purchasers for value and without notice, after the expiration of four years from the last due date of the original purchase money note." *Id.* The court overruled this point of error, explaining that Darby's judgment lien was obtained and recorded after the original purchase-money note and vendor's lien were more than four years past due and no timely renewal had been made. *Id.* at 1010.

On writ of error in 1939, the Commission of Appeals affirmed the appellate court's judgment and the commission's opinion was adopted by the Texas Supreme Court. Commission opinions adopted by the Supreme Court are given the same force, weight, and effect as Supreme Court opinions. *National Bank of Commerce v. Williams,* 125 Tex. 619, 84 S.W.2d 691, 692 (1935).

From the facts, it does not appear that Darby examined the property records or otherwise sought to learn whether Yates' lien was barred by operation of law before recording his judgment lien. The *Yates* court's reasoning suggests that under the statutes of limitations applicable to lien debts against

real property, if no renewal or extension is timely recorded, then once the maturity date is four years past due a party who subsequently acquires a lien does not need to allege or prove a lack of notice concerning the validity of the prior lien as the record speaks for itself.

In other opinions construing articles 5520 and 5522 and their predecessors, the court has repeatedly implied that the notice referred to by the statutes means record notice; unrecorded agreements are binding only between the parties to the agreement. *See Braswell,* 111 S.W.2d at 1085 (limitations statutes protect third persons who acquire liens on or purchase the mortgaged premises more than four years after the maturity date shown in the mortgage where no extension agreement has been recorded); *Novosad v. Svrcek,* 129 Tex. 34, 102 S.W.2d 393, 395 (1937) (junior lienholder not protected by limitations statutes despite unrecorded extension agreements); *Wilkinson v. First Nat'l Bank of Crosbyton,* 118 Tex. 202, 13 S.W.2d 346, 347 (Tex. Comm'n App.1929, opinion adopted) (recording requirement as to third parties is express); *Watson v. First Nat'l Bank of Coleman,* 285 S.W. 1050, 1052 (Tex. Comm'n App.1926, judgm't adopted) (for protection of third parties statutes require that liens barred of record be barred in fact also).

The Legislature has commanded that, "[i]n interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy." TEX. GOV'T CODE ANN. § 312.005 (Vernon 1988); *Ojeda de Toca v. Wise,* 748 S.W.2d 449, 450 (Tex.1988); *Crimmins,* 691 S.W.2d at 584. Prior to 1905, when the Legislature enacted the progenitors of the current statutes, there was no statute of limitations on debt. Notes secured by a deed of trust could be renewed by the parties without record notice. Liens were usually recorded but releases were frequently unrecorded. The result was that third parties desiring to deal with land could not ascertain the status of encumbrances to real property without actually interviewing the parties named in the instruments of record, if the parties could be located. It became im-

portant, therefore, so far as third parties dealing with the lands were concerned, to provide that liens should be barred of record and also in fact. *See Watson,* 285 S.W. at 1052 (discussing underpinnings of recording rules in article 5522 as applicable to third parties versus debtor and creditor relationship).

Omitting the maturity dates of underlying promissory notes from deeds of trust, thus necessitating inquiry by an interested stranger, may legitimately prompt a lienholder to act to protect his interest in accordance with sections 16.035 through 16.037. However, a lienholder cannot sleep on his rights indefinitely and then belatedly attempt to revive and assert them to the detriment of a *bona fide* third party. The purpose of the statute of limitations would be totally defeated if lienholders could assert an outstanding interest in real property against all third parties by refusing to record extension or renewal agreements and then claiming parol extension agreements had been made. An unrecorded extension, particularly an oral extension, is subject to the control of the parties to the agreement and as such is not readily open to inspection or verification by any person having an interest in, or adverse to, the right which it purports to secure. *See Spence v. Brown,* 86 Tex. 430, 25 S.W. 413, 414 (1894) (pointing out virtues of recording written instruments).

■■■ The purpose of requiring recording of renewals and extensions is to protect *bona fide* third parties against the evils of secret liens and the subsequent frauds attendant upon them. *Ojeda de Toca,* 748 S.W.2d at 450–51. To that end, it is provided that an innocent purchaser, having no notice of liens or adverse claims not disclosed by the records in the manner prescribed by the statute, will hold land as against such claims and liens. *Id.* (citing *Taylor v. Harrison,* 47 Tex. 454 (1877)). The recording requirement also protects the parties to the original lien debt by clearly ordering the priority of liens, *see, e.g., Mercer,* 676 S.W.2d at 582; *Hughes,* 172 S.W.2d at 305; *Yates,* 131 S.W.2d at 101; *Mercer v. Bludworth,* 715 S.W.2d 693, 697–98 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), and providing a mechanism by

which the lien debt may be kept in force more than four years after the maturity date. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.036 (Vernon 1997).

 Butler urges us to find that his failure to comply with the recording requirements removed the lien debt from the statute of limitations by putting a third party on notice to inquire about an unrecorded agreement. In light of the preceding discussion, we find Butler's argument to be without merit. We interpret the current limitations statutes as requiring written and timely recorded notice to make an extension agreement effective against third parties. Section 16.035 declares that t]he running of the statute of limitations is not suspended against a ... lienholder ... except as provided by ... Section 16.036." *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.035(c). Section 16.036 provides that an effective extension agreement must be executed in the same manner as for a deed and filed for recording. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.036(b). Finally, section 16.037 expressly makes extension agreements void against third parties who acquire an interest in real property after the debt is barred of record and prior to the time an extension agreement is recorded. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.037. Sections 16.036 and 16.037 both stress execution and filing or recording of an extension or renewal agreement to make it effective. Although an oral contract can be executed by performance, a parol agreement is logically incapable of being filed or recorded; there must be an instrument of some sort. *See* Tex. Prop.Code Ann. § 13.001 et seq. (Vernon 1984 & Supp.1997) (recording statutes uniformly referring to instruments); *see also* Black's Law Dictionary 719 (5th ed.1979) (defining instrument as a written document such as a contract or deed).

 It is undisputed that Butler and the Weaklys did not record an instrument extending the maturity of Butler's lien until November 2, 1993, almost six months after Cadle recorded its abstract of judgment on May 12, 1993, and nearly five years after the maturity date shown on the face of the promissory note. The statutes of limitations require written extensions to be recorded with-in four years of the date of maturity to be effective against a third party's interest. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 16.035– 16.037 (Vernon 1997); *cf. Novosad,* 102 S.W.2d at 396 (suggesting post-bar written extensions are permissible if no third party has acquired an interest in the meantime). We conclude that Butler's lien was barred as of November 18, 1992 as against third parties and the subsequent attempt to extend the lien was ineffective due to the intervention of Cadle's interest prior to the extension's recording. We hold that Cadle proved its counterclaim by establishing that Butler's lien is barred by limitations and that its judgment is valid. Accordingly, we hold that Cadle's judgment lien is superior to Butler's deed of trust lien.

### Butler's Insurance Reimbursement Claim

In his petition, Butler sought recovery from Cadle for insurance premiums paid on lots 35 and 36. Butler presents no theory, law, or argument to support his novel demand for reimbursement from Cadle, who was neither a party to nor beneficiary of the insurance contract and to whom no funds were paid. In its supplemental summary judgment motion, Cadle argued that there is no legal or equitable basis for Butler to prevail on this claim.

In December 1993, Butler learned from the Keetch–Tolson Insurance Agency in Alice, Texas, that the Weaklys had ceased paying insurance premiums on lots 35 and 36 before October 1993. Butler promptly paid Delta Lloyds Insurance Company of Houston $1,506.20 for insurance coverage from October 1993 through January 5, 1994. On January 6, 1994, Cadle recorded the execution deed it received from the U.S. Marshal following the sale to Cadle of lots 35 and 36. On January 14, 1994, Butler wrote to Jeffrey Joseph, an employee of The Cadle Company, requesting reimbursement for the insurance premiums and announcing that Butler had informed Delta Lloyds that Butler would no longer be responsible for the premiums.

In the course of his oral deposition on November 4, 1993, Butler learned that lots 35 and 36 were posted for execution sale on November 10, 1993. Butler acknowledged

knowing what an execution sale meant. He did not attempt to stop the sale nor did he bid on the properties in November 1993. Despite his knowledge of the execution sale date, Butler admittedly failed to attempt to ascertain the current status of the property before paying for insurance coverage. Although in his petition Butler claims that he acquired the insurance for Cadle's benefit, his letter to Joseph indicates that Butler, not Cadle, was the insured party. From this, we conclude that Butler sought to protect his interest, if any, in the property and no one else's. There is no evidence that Cadle expected Butler to acquire insurance on its behalf or had any knowledge of the existence of the insurance or had any rights or entitlement to benefits under the policy.

■ Cadle does not owe Butler restitution for Butler's expenditures. Only a party who receives funds paid due to a mistake of fact may be required to make restitution to the payor. *Bryan v. Citizens Nat'l Bank in Abilene,* 628 S.W.2d 761, 763 (Tex.1982); *Community Mut. Ins. Co. v. Owen,* 804 S.W.2d 602, 605 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Singer v. St. Paul Mercury Ins. Co.,* 478 S.W.2d 579, 583 (Tex. Civ.App.—San Antonio 1972, writ ref'd n.r.e.).

■ We cannot regard the insurance coverage as an improvement to lots 35 and 36. An improvement must be tangible property. *Sonnier v. Chisholm–Ryder Co., Inc.,* 909 S.W.2d 475, 479 (Tex.1995) (by definition, an improvement is tangible chattel annexed to realty); *Logan v. Mullis,* 686 S.W.2d 605, 607 (Tex.1985).

■ There is no unjust enrichment to Cadle. To recover under *quantum meruit,* a claimant has to prove that:

1) valuable services were rendered or materials furnished;

2) for the person sought to be charged;

3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him;

4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing

such services was expecting to be paid by the person sought to be charged. *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex.1990). We find no evidence or inference that Butler obtained the insurance for Cadle's sake, that Cadle was entitled to any benefits under the policy, or that Cadle had any notice that Butler paid the premiums before Butler demanded reimbursement. We agree with Cadle that there is no legal or equitable basis for Butler to prevail on this claim.

## BUTLER'S MOTION FOR SUMMARY JUDGMENT

In addition to seeking a declaratory judgment that his lien was superior and reimbursement for insurance premiums, both of which we have addressed, Butler's motion for summary judgment sought to prove that Cadle was not a good faith purchaser.

■ At his deposition on November 4, 1993, Butler produced copies of the note, which contained the November 18, 1988 date of maturity, the deed of trust, and the written extension agreement dated October 30, 1993. In response to questioning, Butler confirmed that the deed of trust secured the promissory note and that, before October 30, 1993, nothing concerning the note had been reduced to writing since its execution in 1987, apart from the deed of trust. Obviously, Butler's claim on the Weakly property was barred on its face by the statutes of limitations which provide that, concerning a third person, the lien is conclusively presumed released after the passage of four years beyond maturity. TEX. CIV. PRAC. & REM.CODE ANN. § 16.035(d) (Vernon 1997). Because Butler had no interest in the property upon which to base his complaint that Cadle was not a bona fide purchaser, he has no standing to assert this cause of action. *See Ursic v. NBC Bank South Texas, N.A.,* 827 S.W.2d 334, 336 (Tex.App.—Corpus Christi 1991, writ denied) (third party with interest in property has standing to challenge foreclosure sale).

Accordingly, we hold that the trial court erred by failing to grant Cadle's motion for summary judgment and by granting Butler's motion for summary judgment. We sustain appellant's first and second points of error.

We reverse the trial court's order granting Butler's motion for summary judgment. We grant Cadle's motion for summary judgment and render judgment in favor of The Cadle Company.