Jon MERCER, Petitioner,

v.

DAORAN CORPORATION, Respondent.

No. C–2697.

Supreme Court of Texas.

June 27, 1984.

Rehearing Denied Oct. 17, 1984.

Theodore C. Flick, Houston, for petitioner.

Kee & Patterson, Joseph Patterson and Mark H. Neal, Angleton, for respondent.

CAMPBELL, Justice.

This is a suit to determine the priority of liens asserted against real property. The trial court rendered summary judgment for Daoran Corporation, the senior lienholder. The court of appeals affirmed the judg-

ment of the trial court. 662 S.W.2d 382. We reverse the judgments of those courts.

Two questions are presented by this appeal: (1) whether a junior lienholder can move up in priority upon the failure of a senior lienholder to record a contract renewing and extending the senior lien; and (2) whether a fact question exists concerning the validity of a purported renewal and extension contract.

In August 1974, Pauline Ducroz and her son, Charles L. Ducroz, jointly owned fifteen acres of land. They executed a promissory note to the First National Bank of Angleton. The note was secured by a recorded deed of trust. In February 1975, Jon Mercer got a judgment against Charles Ducroz and abstracted the judgment.

In September 1975, Charles and Pauline Ducroz executed a new note and deed of trust to the Bank. This second deed of trust did not recite that it was in renewal and extension of the original debt and lien of August 1974.

In 1976, Pauline Ducroz acquired her son's one-half interest and executed another deed of trust to the Bank. This deed of trust, as well as subsequent deeds of trust executed in 1977 and 1978, expressly recited that the notes were executed in "renewal and extension" of the previous debt.

In September 1979, Mercer foreclosed the judgment lien, bought the property at the sheriff's sale and recorded his deed. In 1980, Pauline defaulted on the payments of the 1978 note, and the Bank posted the property for foreclosure. The Bank bought the property and recorded its trustee's deed. In 1981, the Bank deeded the property to Daoran Corporation.

Mercer brought a partition suit against Daoran to establish his ownership to an undivided one-half interest in the property. Mercer claims his title is derived from the 1975 judgment lien.

Daoran claims its title is derived from the Bank's deed of trust liens which were prior to Mercer's judgment lien. Mercer counters that the only lien dated prior to

his 1975 judgment lien is a 1974 deed of trust lien that was not renewed and extended. He contends this deed of trust lien was barred by the four-year statute of limitations in August 1979. Article 5520.[1] Mercer concludes that his February 1975 judgment lien is prior in time and superior to the Bank's deed of trust lien created in September 1975.

Daoran contends this language in the Bank's 1975 deed of trust is sufficient to renew and extend the 1974 lien:

It is understood and agreed that the proceeds of the aforesaid note to the extent that the same are utilized to take up any outstanding liens and charges against the lands above described ... have been advanced by Noteholder at grantor's request and upon grantor's representation that such amounts are due and are secured by valid liens against the above described land. Noteholder shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens ... regardless of whether said liens, charges or indebtedness are acquired by Noteholder by assignment or are released by the holder thereof upon payment.

If this is sufficient to renew and extend the 1974 lien, then Daoran's title is superior to Mercer's claimed interest.

■ The statute governing renewal and extension contracts to keep liens in force is article 5522. Though not as clear as it might be, that statute requires a signed and acknowledged "contract of extension" to be placed of record to keep a lien in force. While the above language may entitle a noteholder to be subrogated to any rights the Bank had, we hold the language was not sufficient to renew and extend the August 1974 lien between the Bank and the Ducrozes. The 1975 deed of trust does not mention the August 1974 note and lien and does not state it is in renewal and extension of anything. It does not qualify as an article 5522 contract of extension.

1. All citations are to the Texas Revised Civil Statutes Annotated.

Daoran argues that Mercer, as a junior lienholder who acquired his interest when there was a valid lien of record, is not a party entitled to the protection that articles 5520 and 5522 afford. In the case of *Novosad v. Svrcek,* this court, in reference to article 5522, held:

> The primary objects of this article appear to be: (1) To protect a purchaser or lien holder for value and without notice from a prior lien upon land, when it appears from the record that such note or notes for which a prior lien was given are barred by limitations; and (2) not to protect the lien holder who acquires a lien with full knowledge of a valid existing prior lien, then in full force, from a renewal and extension of such prior lien by the owner of the land, although such renewal and extension may be executed either before or after such prior lien appears to be barred by limitation.

129 Tex. 34, 102 S.W.2d 393, 396 (1937). *See also Hughes v. Hess,* 141 Tex. 511, 172 S.W.2d 301 (1943). Article 5522 provides, in part:

> [T]he owner of the land and the holder of the note or notes may at any time enter into a valid agreement renewing and extending the debt and lien, so long as it does not prejudice the rights of lien holders or purchasers subsequent to the date such liens became barred of record....

■ Mercer is not a party protected by this statute. He acquired his lien when the Bank's deed of trust lien was not barred of record.

■ Article 5520, in reference to recorded liens, provides in part:

> At the expiration of such four (4) year period payment of any such lien debt shall be conclusively presumed to have been made and the lien for the security of same ... shall be void and cease to exist, unless said lien is extended by written agreement of the party or parties primarily liable for the payment of the indebtedness, as provided by law; but any such extension agreement shall be a nullity against aforesaid bona fide third

persons dealing with said property without actual notice thereof....

The "bona fide third persons" in this statute are "a bona fide purchaser, lien holder or lessee who ... acquires his interest in the property at a time when any said lien debt is more than four (4) years past due and there is no written extension of record." Thus Mercer, as a lienholder who acquired his interest when the Bank's lien was valid, is not a bona fide third person entitled to the presumption that the debt was paid and that the lien became void and ceased to exist.

Article 5522 authorizes the owner of the land and the holder of the note or notes to "at any time enter into a valid agreement renewing and extending the debt and lien, so long as it does not prejudice the rights of lienholders or purchasers subsequent to the date such liens became barred of record...." Daoran contends that even if the 1975 deed of trust to the Bank is insufficient as a contract of extension under article 5522, a valid extension agreement exists between the Ducrozes and the Bank. As stated in *W.T. Rawleigh Co. v. Terrell:*

> The rule is well established that a junior lien holder who acquires his lien when the debt securing a first lien is not barred, and does not appear of record to be barred, is bound by an extension agreement between the owner of the land and the holder of the first lien, provided the contract of extension is sufficient between the parties thereto.

171 S.W.2d 198, 199 (Tex.Civ.App.—Eastland 1943, writ ref'd).

■ We recognize that Mercer is just as much a stranger to an unrecorded renewal and extension agreement as any person who seeks to acquire a lien or purchase property when all liens appear to be barred of record. However, articles 5520 and 5522 do not protect Mercer. He acquired his interest with knowledge his rights were subject to the rights of a senior lienholder. Therefore, he is bound by any valid extension agreements between the Ducrozes and the Bank.

The next step is to determine whether a renewal and extension agreement between the Ducrozes and the Bank was conclusively established by the summary judgment proof. For the summary judgment to be proper, the summary judgment proof must show "there is no genuine issue as to any material fact." Rule 166–A, Tex.R.Civ.P.

■ Daoran sought to prove a valid extension agreement between the Bank and the Ducrozes by the affidavit of Mr. L.R. Giese together with an alleged "sworn copy" of the promissory note renewing and extending the 1974 indebtedness. Mr. Giese was president of the Bank, and claims to have handled all matters relating to the Ducroz loans. His affidavit reads in part: "On September 23, 1975, the entire principal indebtedness above referred to was renewed and extended...." By stating the indebtedness was "renewed and extended" Giese asserted only a legal conclusion. A legal conclusion in an affidavit is insufficient to raise an issue of fact in response to a motion for summary judgment or to establish the existence of a fact in support of a motion for summary judgment. *See Brownlee v. Brownlee*, 665 S.W.2d 111 (Tex.1984).

Mr. Giese's affidavit goes on to read: ... Charles L. Ducroz, Pauline Ducroz and C.A. Ducroz executed a $55,000 renewal note in renewal and extension of the indebtedness evidenced by the August 12, 1974 note. A true and correct copy of the September 23, 1975 renewal note is attached hereto as Exhibit "B–2." I hereby certify that said Exhibit "B–2" is a true and correct copy of the original thereof; that the original of Exhibit "B–2" was kept in the ordinary course of business; that it was within the ordinary course of business for an employee of the bank with personal knowledge of the information and transaction reflected thereon; ...

■ In its brief, Daoran describes the Exhibit "B–2" referred to by Giese as a "copy of a promissory note ... prepared for the signatures of Charles L. Ducroz, Pauline Ducroz and C.A. Ducroz." Mercer

made objections to the admissibility of the affidavit and the alleged "sworn copy" of the note. Foremost among the objections was that the original of the note had not been produced and there was no explanation for failure to produce the original—all in violation of the best evidence rule. If the original writing is not produced or its non-production accounted for, evidence of its contents is not admissible. *J.E. Earnest & Company v. Word*, 137 Tex. 16, 152 S.W.2d 325 (1941); 2 R. Ray, Texas Law of Evidence Civil and Criminal § 1563 (3d ed. 1980).

For Daoran to be entitled to summary judgment, it must conclusively prove a valid renewal and extension agreement between the Ducrozes and the Bank. Then Mercer, as a junior lienholder, would be bound.

■ Daoran's proof of a valid agreement is limited to the legal conclusion in Giese's affidavit and an alleged copy of a note. The copy is, at best, a copy of a document that was prepared for the signatures of the Ducrozes. Although Giese's affidavit testimony established that a note was executed, the alleged "sworn copy" on its face is *not* a copy of an executed note. The original was not produced, and Mercer's "best evidence rule" objection put the contents of the original note in issue.

Daoran argues the cases of *Zarges v. Bevan*, 652 S.W.2d 368 (Tex.1983), and *Life Insurance Company of Virginia v. Gar-Dal, Inc.*, 570 S.W.2d 378 (Tex.1978), support its contention that its purported "sworn copy" of the 1975 note is competent summary judgment proof. In those cases, however, the copies of the notes were, indeed, copies of originals complete with signatures.

Daoran also argues that the explanation for the absence of the original from the summary judgment record was that the note was paid by renewal, and that as a matter of law the Bank was no longer a holder thereof. This explanation begs the issue. It would only be an appropriate explanation if a copy of the original has

been tendered in its stead. As indicated, the document tendered by Daoran on its face could not be a copy of the original because that note, as sworn to by Giese, was supposedly executed and the attached copy was not executed.

Daoran also cites *Hyman v. Alberry*, 130 S.W.2d 891 (Tex.Civ.App.—Beaumont 1939, writ dism'd, judgt. cor.), for the proposition that a reconstructed version of an original instrument produced by a witness swearing to its accuracy is admissible. In *Hyman*, however, the original instrument was lost, and no copies were available. A witness who had typed the original instrument reproduced the instrument from memory. A jury ultimately determined that the instrument, a reproduction of which had been created by a witness, had been executed and delivered to the party seeking the benefits of the contents of that instrument.

Our case differs from *Hyman*. Giese does not purport to have attached a reconstructed note to his affidavit. He instead swears that he has attached to his affidavit a copy of an original executed note. The absence of the original was never explained. The "best evidence rule" objection should have been sustained. There is no competent evidence in the record indicating that the September 1975 note renewed and extended the August 1974 note. The summary judgment was improper.

The judgments of the trial court and court of appeals are reversed and the cause is remanded to the trial court for further proceedings.