In re PRIME VENTURES,
LTD., Debtor.

Charles DUCK, Trustee, Plaintiff,

v.

MANHATTAN SAVINGS BANK, Syntek Management, Inc., Syntek Corporation, Westview Drive Associates and South-mark Corporation, Defendants.

No. C–86–5219 SAW.
Bankruptcy No. 4–84–03174 W.
Adv. No. 485–0087 AW.

United States District Court,
N.D. California.

Dec. 29, 1986.

McCutchen, Doyle, Brown & Enersen, William Bates, III, Randy Michelson, San Francisco, Cal., for defendants.

Dinkelspiel & Dinkelspiel, Peter J. Benvenutti, Michael St. James, San Francisco, Cal., for plaintiff.

MEMORANDUM OF OPINION
AND ORDER

WEIGEL, District Judge.

Prime Ventures, Ltd.'s trustee in bankruptcy, Charles Duck (Trustee), brought

---

**11.** This opinion constitutes the court's findings of fact and conclusions of law pursuant to

Bankr.Rules 9014 and 7052.

this action to determine the validity of two promissory notes with an outstanding balance of approximately $3.6 million held by defendant Manhattan Savings Bank (Manhattan). The notes are secured by a first deed of trust encumbering an apartment complex (Apartments) located in Houston, Texas and owned by Prime Ventures. The Trustee argues that the notes and trust deed are void because Manhattan failed to sue to foreclose the lien within the four-year period provided by the Texas statute of limitations. Manhattan argues that the notes and trust deed are still enforceable. The United States Bankruptcy Court for the Northern District of California, Wolfe, J., granted Manhattan's motion for summary judgment and denied the Trustee's cross-motion for summary judgment. The Trustee appeals.

## FACTS AND ISSUES

The facts are not in dispute. Manhattan's lien upon the Apartments was created by two deeds of trust granted in 1968 and 1969 to Manhattan's predecessor in interest by the then owner of the real property, Prime Ventures' predecessor in interest. The deeds of trust secured loans totalling $5.9 million from Manhattan's predecessor in interest to the owner and were duly recorded in the mortgage records of Harris County, Texas. Through a series of conveyances not contested here, the deeds were ultimately consolidated and assigned, along with the notes they secured, to Manhattan.

Manhattan did not receive its monthly payments in October, November, and December, 1975, and consequently declared a default and accelerated the obligation under the notes. The parties interested in the property then engaged in workout negotiations, which resulted in January, 1976 in an agreement (Forbearance Agreement) under which the default would be cured and the notes renewed upon the subsequent execution and recording of a Renewal Note and Renewal Deed of Trust. Until delivery of the Renewal Deed of Trust, however, monthly payments of $45,479.17 were to be made as contemplated under the original notes. These monthly payments resumed immediately and continued until Prime Ventures filed its bankruptcy petition in October, 1984. The Forbearance Agreement provided for the tolling of the four-year Texas statute of limitations for actions on notes secured by deeds of trust until the earlier of July 1, 1977 or the delivery of the Renewal Deed of Trust.

The Forbearance Agreement itself did not cure, renew, or extend the promissory notes and deed of trust; it explicitly provided that such renewal, rearrangement, and extension of the original notes would be effected only by a Renewal Note and Renewal Deed of Trust. No Renewal Note or Renewal Deed of Trust was ever prepared, executed, or recorded against title to the property. As a result, the Trustee argues, the statute of limitations resumed running on July 1, 1977 and expired on June 30, 1981, barring foreclosure by Manhattan. Manhattan counters that the following events resulted in an extension of its lien that was sufficient to suspend the limitations period under Texas law.

In November, 1976, Prime Ventures' predecessor in interest, defendant Westview Drive Associates, grantor, executed a wraparound deed of trust (Wraparound Deed) to a predecessor in interest of defendants Syntek Management, Inc., Syntek Corporation, and Southmark Corporation ("Syntek Defendants"), as beneficiary. Prime Ventures' predecessor in interest, as debtor, promised to make regular payments to the predecessor in interest of the Syntek Defendants, who in turn promised to make payments to Manhattan under the original notes.

The Wraparound Deed explicitly recognized and provided for payment of the prior liens held by Manhattan. The issue in this appeal is whether, under Texas law, the Wraparound Deed was an "extension agreement" suspending the statute of limitations.

## DISCUSSION

Manhattan argues that New York law should govern this action because the debt

is payable in that state. The bankruptcy judge found the law of Texas to be applicable for the following reasons: (1) the original deeds of trust adopted the law of Texas; (2) the Forbearance Agreement contemplated the application of Texas law with respect to the tolling of the statute of limitations; and (3) under California choice of law doctrine, Texas has the greater "governmental interest" in the action because the real property at issue is located in that state. It is unnecessary to decide the question of choice of law, however, because even under the law of Texas, which is the law most favorable to the position of the Trustee, the Court finds that the judgment for Manhattan must be affirmed.

■ Under Texas law, actions to foreclose a vendor's deed of trust securing a note must be instituted within four years after the cause of action accrues. Tex.Rev. Civ.Stat.Ann. art. 5520 (this provision, and the other Texas statutes hereafter cited, were repealed in 1985 and reenacted without substantive changes as part of an ongoing revision of the language and codification of Texas statutes. *See* 1 Vernon's Texas Codes Annotated, Civil Practice and Remedies Code, at IX–X (1986) (Reviser's Report, April, 1984)). Unlike the law of most states, the law of Texas does not toll the limitations period when, as in this case, payments are resumed on the obligation. The limitations period can be tolled, however, by a written agreement that extends the maturity date of the lien. An extension agreement that is properly recorded and acknowledged is binding against bona fide third-party successors in interest of the debtor. Tex.Rev.Civ.Stat.Ann. art. 5520 (Vernon 1958).

■ A trustee in bankruptcy is considered a bona fide purchaser of real property in the bankruptcy estate, and may avoid obligations of the debtor that are voidable by such a purchaser, 11 U.S.C. § 544(a)(3), but he is also charged with notice of the state of record title to the property under state law, *In re Gurs (Walsh v. Saghi)*, 27 B.R. 163, *rehrg. de-*

*nied*, 34 B.R. 755 (B.A.P. 9th Cir.1983). Thus, since the Wraparound Deed was properly recorded, Prime Ventures' trustee in bankruptcy is bound by it if it otherwise satisfies the criteria for an extension agreement.

■ Aside from the recording requirement, Texas statutes are vague as to the elements of an extension agreement. *See, e.g., Mercer v. Daoran Corp.*, 676 S.W.2d 580, 581 (Tex.1984) ("The statute governing renewal and extension contracts ... is ... not as clear as it might be...."). Tex.Rev. Civ.Stat.Ann. art. 5522 provides that a "contract of extension" must be "signed and acknowledged ... by the party ... obligated to pay such indebtedness ... and filed for record in the county clerk's office...." (Vernon 1958). Manhattan argues that the statute embodies two criteria, both of which are satisfied by the Wraparound Deed: it is a recorded contract, and it was signed and acknowledged by the party obligated thereunder, namely Prime Ventures' predecessor in interest. The Trustee argues that the statutory requirement of a "contract" contemplates a meeting of the minds between the debtor and lienholder, and that therefore the Wraparound Deed, to which Manhattan was not a party, cannot constitute an extension agreement.

The statute provides some support for the Trustee's argument. The third clause of article 5522 states that "the owner of the land and the holder of the note or notes may at any time enter into a valid agreement renewing and extending the debt and lien...." *Id.* Taken in isolation, this would imply that the Wraparound Deed was not a valid extension agreement because the "holder of the note," Manhattan, was not a party to the agreement. However, the third clause does not appear to govern the criteria that must be met for an extension agreement to toll the statute of limitations; these criteria are set forth in the first clause, quoted earlier. Instead, the third clause appears to modify the second clause of the provision, which pertains to the related evidentiary issue of the ma-

turity date of the debt at issue. *Id.* This interpretation is reinforced by the omission of any reference to the "holder of the note" in the current recodification of this provision. *See* Tex.Civ.Prac. & Rem.Code Ann. § 16.036 (Vernon 1986).

Several of the cases cited by the Trustee do imply that the lienholder must be a party to an extension agreement. However, most of these cases do not involve the operation of the four-year statute of limitations. *See, e.g., Workman v. Ray,* 180 S.W. 291 (Tex.Civ.App.1915). They therefore apply general principles of contract law, rather than the more flexible criteria for agreements tolling the limitations period under Tex.Rev.Civ.Stat.Ann. arts. 5520 & 5522. One of the cases cited by the Trustee does involve the statute of limitations, *York v. Hughes,* 275 S.W. 229 (Tex. Civ.App.1925), but its authority is eclipsed by the more apposite and recent case of *Belote v. Enochs,* 131 S.W.2d 691 (Tex.Civ. App.1939).

In *Belote,* Enochs' predecessor in interest held a vendor's lien on a parcel of land to secure a note executed by defendant Belote and due January 1, 1930. On January 16, 1935, more than four years after the due date of the note, Belote conveyed the parcel by a deed to co-defendants Windham and Graddy, who shortly thereafter executed a deed of trust for the benefit of co-defendant Owens that created a lien upon the parcel. In language similar to that in the Wraparound Deed at issue here, the deeds in *Belote* recited the existence and superiority of the original note payable to Enochs' predecessor. When Enochs sued one year later to foreclose the original lien on the parcel, defendants averred that the action was barred by the four-year statute of limitations. *Id.* at 692–93. Despite the fact that Enochs was not a party to the deed from Belote to Windham and Graddy, the court held that the instrument was a renewal and extension of the original debt to Enochs under article 5522. *Id.* at 695–96.

The court stated that the renewal was "binding on Belote and those thereafter acquiring an interest in or liens on the land." *Id.* at 696. In other words, it would be binding on a subsequent third-party successor such as the Trustee in the case at bar. The Trustee argues that the quoted statement is dictum, and that the holding of *Belote* represents orthodox Texas doctrine that obligors of time-barred liens and holders of junior liens can be estopped from invoking the statute of limitations. It is true that *Belote* could have based its holding on such rationales, but it did not do so. Instead, *Belote* found that the deed constituted a renewal agreement meeting the requirements of article 5522 and therefore binding upon all successors to defendants.

The Trustee also argues that extension agreements must be supported by consideration in the form of the lienholder's promise to forbear from seeking foreclosure during the extended period of the debt. It is true that some cases cite lack of such consideration as a partial basis for denying the validity of an extension agreement. *See, e.g., Fakes v. Vilven,* 119 S.W.2d 895, 897 (Tex.Civ.App.1938). But *Belote,* the case most closely on point, held that the deed of trust therein constituted an extension agreement even though it could not possibly contain such a promise of forbearance, since the lienholder was not a party to the agreement.

The most recent case in the Supreme Court of Texas addressing extension agreements is *Mercer v. Daoran Corp.,* 676 S.W.2d 580 (Tex.1984). In *Mercer,* a bank held a promissory note that matured in August, 1975 and was secured by a deed of trust to a parcel of land. In September, 1975, the bank and the debtor executed a new note secured by a second deed of trust that referred in general terms to outstanding liens and the possibility that the proceeds of the new note might be used to satisfy such liens, but did not specifically mention the senior lien. *Id.* at 581.

The issue in *Mercer* was whether the bank was barred by the four-year statute of limitations from foreclosing the original lien in 1980. The court held that the lien

was not renewed by the September, 1975 deed of trust because the junior "deed of trust does not mention the [senior] note and lien and does not state it is in renewal and extension of anything." *Id.* at 581. The Wraparound Deed in this case also fails to explicitly state that "it is in renewal and extension of anything." Unlike the deed of trust in *Mercer,* however, the Wraparound Deed here specifically mentions Manhattan's original trust deed and provides for payment on the underlying notes. Thus, *Mercer* does not undermine the authority of *Belote.*

For the foregoing reasons, the judgment of the bankruptcy court is affirmed.

IT IS SO ORDERED.