**Jerry T. CHEATHAM, Appellant,**

v.

**ALLSTATE OF TEXAS, INC., d/b/a National Business Search, Appellee.**

**No. 05–86–00255–CV.**

Court of Appeals of Texas, Dallas.

April 30, 1987.

B. Prater Monning, III, Dallas, for appellee.

Ronnie Phillips, Denton, for appellant.

Before HOWELL, LAGARDE and McCRAW, JJ.

HOWELL, Justice.

Appellant, Jerry T. Cheatham, defendant in the trial court, appeals from a summary judgment awarding a brokerage commission to plaintiff-appellee, Allstate of Texas, Inc. d/b/a National Business Search (NBS). Cheatham contends that the existence of a genuine issue of material fact precluded summary judgment. We disagree and affirm.

The record does not contain the underlying agreement, but it appears that the owners of an air conditioning contracting business known as Southwest Air, a division of Hamilton Air Mart, Inc. (Hamilton), listed that business for sale with NBS, a business broker, and contracted to pay NBS a commission if NBS located a purchaser. Cheatham thereafter expressed to NBS an interest in acquiring Southwest Air. Before discussions proceeded far, NBS procured Cheatham's signature on a printed form agreement entitled, "Representation of Purchaser." That agreement provided that in return for being provided with information concerning Southwest Air, Cheatham agreed not to "enter into any ... arrangements for the purchase of the business" except through NBS. The agreement required that any contract signed by Cheatham for the purchase of Southwest Air contain a clause requiring the payment of a commission to NBS. It further provided that, in the absence of such a commission provision, Cheatham would pay the commission himself. The obvious objective of the representation of purchaser agreement was to assure NBS that it would not be bypassed and deprived of a commission through direct dealings between the prospective seller and the prospective buyer.

On February 10, 1984, Cheatham entered into a contract with Hamilton, operating as a debtor-in-possession under the Bankruptcy Code, Texas Heller Western, a California corporation, and the unofficial creditors committee of Hamilton, under which Cheat-

ham, as president of Michel's Cabinets, Inc., purchased virtually all of the assets of Southwest, including its furniture, fixtures, trucks, and equipment. The contract contained no specific reference to the name or goodwill of Southwest. In addition, it contained no provision for the payment of a brokerage commission to NBS by Southwest or its owner. Upon learning that the transfer had been concluded without its participation, NBS made demand upon Cheatham that he pay the commission, but he refused. Upon these facts, the trial court granted NBS a partial summary judgment that Cheatham breached the representation of purchaser agreement and subsequently entered against him a final judgment for money damages. His appeal centers upon the summary judgment.

On motion for summary judgment, the trial court must determine whether there is any evidence of probative force that raises a fact question on a material issue such that reasonable minds could differ. *Portnow v. Berg,* 593 S.W.2d 843, 845 (Tex.Civ. App.—Houston [1st Dist.] 1980, no writ). In making this determination, the trial court must view the evidence in the light most favorable to the party opposing the motion. *Whitten v. Metro Bank of Dallas,* 556 S.W.2d 383, 386 (Tex.Civ.App.—Waco 1977, no writ). However, if the summary judgment evidence demonstrates that, except for damages, no genuine issue of fact exists, the movant is entitled to judgment as a matter of law. *Fidelity & Deposit Company of Maryland v. Wellington Trade, Inc.,* 640 S.W.2d 698, 700 (Tex.App. —Houston [14th Dist.] 1982, no writ).

Cheatham contends that a genuine issue of fact existed as to whether his purchase of those assets of Southwest Air enumerated in the February 10, 1984 contract constituted a purchase of the business known as Southwest Air as contemplated by the representation of purchaser agreement that he had executed. He asserts that he raised this issue of fact in his controverting affidavit, stating that, "I never purchased the business Southwest Air," and that "the agreement I entered into [to purchase assets of Southwest Air] did not provide for the purchase of the business as anticipated

by the representation of purchaser [agreement with NBS]." Upon analysis, these statements constitute no more than an argument as to the proper interpretation of the contract, inasmuch as the enumeration of assets acquired is virtually undisputed. In short, the statements are not factual assertions; they are merely contentions as to the proper interpretation of the contract, and they do not constitute summary judgment evidence. *See Mercer v. Daoran Corporation,* 676 S.W.2d 580, 583 (Tex. 1984); *Schultz v. General Motors Acceptance Corporation,* 704 S.W.2d 797, 798 (Tex.App.—Dallas 1985, no writ).

In his affidavit, Cheatham conceded that:

I did, as an officer of Michael's Cabinets, Inc., purchase certain assets including furniture, fixtures, trucks and equipment of Southwest Air. However, I never purchased the business iteself, including its name, goodwill, property, real estate, buildings, etc.

In essence, Cheatham asserts that because he did not *purchase* the name, goodwill, property, real estate, and buildings of Southwest Air, a factual question exists as to whether he purchased the "business" of Southwest Air. We disagree.

The undisputed summary judgment evidence reflects that Cheatham agreed to purchase substantially all of Southwest Air's tangible assets (as evidenced by a forty-seven page, 837–item list attached to the February 10, 1984 agreement), to complete jobs already undertaken by Southwest Air, to take over the backlog of Southwest Air's outstanding warranty obligations, and to retain the individuals employed by Southwest Air.

With respect to the assets of Southwest Air that Cheatham contends that he did not buy, the February 10 agreement recited that Cheatham's company would adopt the name of Southwest Air for one of its divisions. Thus, a fair reading of the purchase contract reflects that the parties contemplated that Cheatham's company would thereafter use the Southwest Air name and that the sellers would not do so. We hold that the name passed by operation of the

agreement, although the name was not expressly listed as an asset being transferred.

Insofar as the real estate and buildings are concerned, Cheatham's company leased them instead of purchasing them. Thus, the use and enjoyment of the business property passed to Cheatham's company. The fact that a business premises is leased rather than conveyed outright does not distinguish the transaction from "the purchase of a business."

Insofar as goodwill is concerned, we cannot conceive how Southwest Air could have enjoyed or held any goodwill apart from its location and physical assets. Inasmuch as all of these items were passed to Cheatham's company, we hold that any goodwill enjoyed by the grantor also passed. *See Sanderfur v. Beard*, 249 S.W. 274, 275 (Tex.Civ.App.—San Antonio 1923, no writ) (even though not mentioned by the terms of an agreement, a partnership's goodwill passes upon sale of retiring partner's interest in the entire property of the firm).

We hold that Cheatham's affidavit failed to raise an issue as to whether the purchase of Southwest Air's assets on February 10 fell short of a purchase of the business of Southwest Air as contemplated by the representation of purchaser agreement. Except for damages, there was no genuine issue of fact over which reasonable minds could differ.

The partial summary judgment was proper and the final judgment based thereon was also proper. The case is,

AFFIRMED.