# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00316-CV

**Matthew A. Pryor, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT**
**NO. D-1-GN-16-000507, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Matthew A. Pryor appeals the trial court's summary judgment in favor of the State of Texas. The State brought an enforcement action against Pryor alleging that he was the owner of real property who had abandoned three underground storage tanks on his land without closing them in accordance with state law and seeking civil penalties and injunctive relief. *See* Tex. Water Code §§ 7.101 (prohibiting person to "cause, suffer, allow, or permit" statutory, rule, order, or permit violation), .102 (providing for civil penalty of not less than $50 nor greater than $25,000 for each day of each violation), .105 (providing that upon request of executive director of Texas Commission on Environmental Quality (TCEQ), attorney general shall institute civil suit in name of State for injunctive relief and/or civil penalties), 26.341–.367 (regulating, in relevant part, underground storage tanks). The parties filed competing motions for summary judgment, and the trial court

denied Pryor's motion and granted the State's motion. For the reasons that follow, we affirm the trial court's judgment.

## STATUTORY FRAMEWORK

Finding that "leaking underground storage tanks containing certain hazardous, toxic, or otherwise harmful substances" threaten groundwater and surface water resources of the State, the Legislature has authorized the State to require the use of "all reasonable methods" to maintain and protect water quality. *See id.* § 26.341. TCEQ is authorized to develop and administer the State's underground storage tank programs under chapter 26, subchapter I of the Texas Water Code and to adopt rules necessary to implement the programs. *See id.* § 26.345; *see also generally* 30 Tex. Admin Code §§ 334.1–.606 (2016) (Tex. Comm'n on Envtl. Quality) (Underground and Above Ground Storage Tanks).[1] An underground storage tank includes "any one or combination of underground tanks and any connecting underground pipes used to contain an accumulation of regulated substances, the volume of which, including the volume of the connecting underground pipes, is 10 percent or more beneath the surface of the ground." Tex. Water Code § 26.342(17). A "regulated substance" includes "petroleum, including crude oil or a fraction of it" and "any other substance designated by the commission." *Id.* § 26.343. Motor gasoline and diesel fuel are regulated substances designated by TCEQ. *See* 30 Tex. Admin. Code § 334.2 (59), (81), (91) (Definitions).

Under the Water Code, the "owner" of an underground storage tank means:

---

[1] All cites to 30 Tex. Admin. Code are to rules promulgated by TCEQ.

> [a] person who holds legal possession or ownership of an interest in an underground storage tank system. . . . If the actual ownership of an underground storage tank system . . . is uncertain, unknown, or in dispute, the fee simple owner of the surface estate of the tract on which the tank system is located is considered the owner of the system unless that person can demonstrate by appropriate documentation, including a deed reservation, invoice, or bill of sale, or by other legally acceptable means that the underground storage tank system . . . is owned by another person. . . .

Tex. Water Code § 26.342(9). In short, when there is any doubt about ownership, the fee simple owner of the surface estate on which the tank is located is the presumed owner of the tank unless the property owner demonstrates by documentation or other "legally acceptable means" that someone else owns the tank. *See id.*

Generally, an underground storage tank must be registered with TCEQ. *See id.* § 26.346(a); 30 Tex. Admin. Code § 334.7 (Registration for Underground Storage Tanks (USTs) and UST Systems). While registration does not conclusively establish legal ownership, TCEQ may rely on the registration form for determining ownership until new documentation shows otherwise. The Water Code provides that:

> [a] person that has registered as an owner of an underground storage tank system . . . with the commission under Section 26.346 after September 1, 1987, shall be considered the tank system owner until such time as documentation demonstrates to the executive director's satisfaction that the legal interest in the tank system was transferred to a different person subsequent to the date of the tank registration.

Tex. Water Code § 26.342(9). Thus TCEQ's executive director has discretion as to when to rely on registration for determination of ownership. *See id.* TCEQ is required to "adopt requirements for the closure of tanks, including the removal, disposal, or removal and disposal of tanks to prevent future releases of regulated substances into the environment." *See id.* § 26.350. An owner who

3

intends to permanently remove a tank from service must notify TCEQ and take certain steps to ensure that the tank will not pose a continuing threat to the environment. *See* 30 Tex. Admin Code § 334.55 (Permanent Removal from Service).

TCEQ may initiate a proceeding and assess an administrative penalty against a person who violates a statute, rule, order, or permit under TCEQ's jurisdiction. *See* Tex. Water Code §§ 7.002 (giving TCEQ enforcement authority), .051 (providing that TCEQ may assess administrative penalty against person who violates statute, rule, order or permit), .052 (setting maximum administrative penalty of $10,000 per day for each violation). An administrative penalty may be recovered in a civil action brought by the attorney general. *See id.* § 7.072. In addition, "[a] person who causes, suffers, allows, or permits a violation of a statute, rule, order, or permit" under the jurisdiction of TCEQ "shall be assessed for each violation a civil penalty not less than $50 nor greater than $25,000 for each day of each violation . . . ." *Id.* § 7.102; *see also id.* § 7.101. Upon the request of the executive director of TCEQ, the attorney general shall institute a civil suit in the name of the State of Texas for injunctive relief and/or civil penalties. *See id.* § 7.105. If the State prevails, it may recover attorney's fees and costs. *See id.* § 7.108.

### FACTUAL AND PROCEDURAL BACKGROUND

The property at issue is the site of a former automobile service and gas station previously owned by Parker Tire & Service Inc. (Parker Tire) and located in Port Arthur, Jefferson County, Texas (the Property). In 1988, Parker Tire registered three underground storage tanks located on the Property with TCEQ. In 1989, Parker Tire sold the Property by loan to Hien Duong. In late 1992, after receiving an invoice for underground storage tank fees, Parker Tire submitted a

4

form to TCEQ requesting that the registration be changed to reflect that Duong was the owner, but the change was not made until Duong notified TCEQ of the change in ownership in early 1993. According to the State, three days after submitting his notification form, Duong defaulted on his loan and Parker Tire foreclosed on the loan and reacquired the Property. In December 1993, Parker signed a warranty deed transferring the Property and "all of the improvements" "AS IS, WHERE IS, WITH ALL ITS FAULTS" to Pryor, and the deed was recorded in the Jefferson County property records. Pryor did not update the registration or take any action to permanently remove the tanks. It appears from the record that at some point the building that had housed the service station was destroyed by fire and subsequently demolished by the City of Port Arthur.

In 2007, TCEQ conducted an on-site inspection of the Property and determined that the three underground storage tanks had been improperly abandoned. According to the TCEQ inspector, at that time, fuel product remained in at least one of the tanks. TCEQ registration records included Parker Tire and Duong as one-time owners, but upon inquiry into Jefferson County property records, TCEQ discovered the deed transferring the Property to Pryor. TCEQ sent notice of violations to Pryor at his last known address, as stated on the deed, and to other suspected addresses. TCEQ's summary judgment evidence of this correspondence included a letter dated September 4, 2009, sent to a Louisiana address by certified mail, and the signed return receipt or green card. When Pryor did not respond, TCEQ initiated an administrative enforcement action against Pryor and obtained a default order—in which TCEQ found that Pryor had received notice of the action in 2010 by certified mail, return receipt requested, and failed to timely respond—and assessed administrative penalties against him. *See id.* §§ 7.051, .052, .057 (providing that if person

5

charged with violation does not timely respond to notice, TCEQ may by order assess penalty), 26.3475(e) (providing that if owner does not correct violation after notice, TCEQ may order tank out of service). In 2011, TCEQ conducted a compliance file review and determined that it had received no documentation demonstrating compliance with the default order, that the tank registration had not been updated, and that the administrative penalty had not been paid.

In January 2016, TCEQ conducted another on-site inspection of the Property and, according to the inspector, found that the abandoned storage tanks remained on the site, that the previously observed fuel product was no longer present, that groundwater and/or surface water had infiltrated the tanks, and that there were "hydrocarbon sheens on the surface of pooled water located on the cracked concrete slabs covering" two of the tanks. Soon thereafter, the State filed the underlying enforcement action against Pryor in Travis County district court seeking civil penalties, an injunction requiring Pryor to properly remove the tanks from service, attorney's fees, and costs. *See id.* §§ 7.101, .102, .105, .108. The State filed a traditional motion for summary judgment, and Pryor filed a traditional and no-evidence motion for summary judgment. After a hearing, the trial court denied Pryor's motion, granted the State's motion, and ordered judgment in favor of the State, awarding civil penalties, attorney's fees, and costs against Pryor and entering a permanent injunction ordering Pryor to take the statutorily required steps to permanently remove the underground storage tanks. *See* 30 Tex. Admin. Code §§ 334.55, .72–.82 (addressing release reporting and corrective action), .85 (Management of Waste). This appeal followed.

**STANDARD OF REVIEW**

We review summary judgments de novo. *Southwestern Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015). We take as true all evidence favorable to the non-moving party, and we indulge every reasonable inference and resolve any doubts in the non-moving party's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A movant for traditional summary judgment must establish that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). When the movant satisfies this initial summary judgment burden, the burden shifts to the nonmovant to produce evidence raising an issue of material fact. *See* Tex. R. Civ. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 517 (Tex. 2014). A genuine issue of material fact exists if the nonmovant produces evidence that "rises to a level that would enable reasonable and fair-minded jurors to differ in their conclusions." *Parker*, 514 S.W.3d at 220 (internal quotations and citation omitted). The evidence does not create an issue of material fact if it is "'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Id.* (quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014). Such evidence is "no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

Our analysis also requires statutory construction, which is a question of law that we review de novo. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017). Our primary concern is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). "If that language is unambiguous, we interpret the

7

statute according to its plain meaning." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam).

## DISCUSSION

In a single issue, Pryor argues that the trial court erred in granting the State's motion for summary judgment because the summary judgment evidence does not establish that legal title to the tanks was conveyed to him and he raised a genuine issue of material fact concerning ownership of the tanks.[2] In its motion for summary judgment, the State argued that (1) the deed established that Pryor owned the Property, which was prima facie evidence that he owned the tanks, *see* Tex. Water Code § 26.342(9); (2) Pryor had not provided any documentation or shown by any other "legally acceptable means" that the tanks were owned by someone else, *see id.*; (3) Pryor had not complied with tank registration or removal requirements, *see id.* §§ 26.346, .350; 30 Tex. Admin. Code §§ 334.7, .55; (4) Pryor had "caused, suffered, allowed, or permitted" violations of state law, *see* Tex. Water Code § 7.101, and was liable for civil penalties, *see id.* §§ 7.102, .105; (5) the State was entitled to injunctive relief, *see id.* § 7.105; and (6) Pryor was liable for fees and costs, *see id.* § 7.108; Tex. Gov't Code § 402.006 (providing for recovery of attorney's fees by attorney general in cases in which state is entitled to recover penalty). On appeal, Pryor does not dispute that he did not register or remove the tanks or that the tanks remain abandoned at the Property; rather, he challenges all of the State's contentions by arguing that the State failed to meet its burden to

---

[2] On appeal, Pryor does not argue that he was entitled to summary judgment on his motion as a matter of law or that the trial court erred in denying his motion. His arguments are confined to urging that the State did not meet its summary judgment burden, and he seeks remand of this proceeding.

8

establish Pryor's ownership of the tanks and to establish that Pryor did not demonstrate by any "legally acceptable means" that the tanks are owned by someone else. *See* Tex. Water Code § 26.342(9) (defining "owner" of tank as person who holds legal possession or ownership interest and providing that when ownership is in dispute, fee simple owner of surface estate is considered owner of tank unless presumed owner demonstrates by documentation or "other legally acceptable means" that someone else owns tank). Because, as discussed below, we conclude that the State established Pryor's ownership of the tanks through a presumptively valid deed, the burden shifted to Pryor to create an issue of material fact. *See Amedisys*, 437 S.W.3d at 517. In short, this appeal turns on whether Pryor's summary judgment evidence created a genuine issue of material fact as to ownership of the tanks.

**Summary Judgment Evidence**

The evidence attached to the State's motion included the warranty deed dated December 6, 1993, indicating that Parker Tire conveyed the Property and "all of the improvements" "AS IS, WHERE IS, WITH ALL ITS FAULTS" to Pryor, and a Notice to Purchasers, describing the same property, signed by Parker on the same date as the deed, and bearing a signature that read "Matthew A. Pryor" and the date of December 14, 1993.[3] The State's summary judgment evidence also included Pryor's testimony from a prior hearing in the trial court, in which, when asked if the signature on the Notice to Purchasers was his, he replied, "I'm not quite sure. It looks like my signature."

---

[3] The Notice to Purchasers informed any buyer that the Property is located in the Jefferson County Drainage District No. 7 and is subject to the district's taxing authority.

Pryor's summary judgment evidence included his affidavit and the deposition testimony of Parker; Isaiah Pryor, Pryor's brother; James Black, Parker's attorney; and Esker Sawyer, TCEQ's site inspector. In his affidavit, Pryor averred that (1) he did not know Parker and did not sign any contract or pay any money for the Property or pay any property taxes on the Property; (2) he had produced as evidence Parker's deposition testimony in which Parker "confirm[ed]" that Chevron USA (formerly Gulf Oil Company) owned the tanks; (3) he was "not sure" if the signature on the Notice to Purchasers was his, but "if it [was his] signature," he did not agree to purchase the property or tanks by signing the Notice to Purchasers; (4) he did not authorize anyone "to include [his] name as the grantee or buyer" of the Property or authorize Parker or Black to file the warranty deed, and (5) the deed was fraudulently filed.

Parker testified that Eva Pryor[4] approached him about renting the Property, that he offered to sell it to her, that she agreed and paid $2,500 for it, that she asked him to put the deed in Pryor's name, and that he never met Pryor. He later stated that Eva and a man came to the closing, that the man introduced himself as "Pryor," that he assumed it was Matthew Pryor, and that Eva said, "That's the man." Concerning ownership of the tanks, Parker testified that he did not know if he owned them, but if he owned them, then he sold them to Eva, explaining that he sold "everything that was there" and did not think about the tanks as a separate purchase. Parker also testified that Gulf Oil owned the tanks but then stated that was just his "belief" and that he had no documents to support that Gulf Oil or anyone else owned the tanks. In explaining why he believed that Gulf Oil

_____

[4] The summary judgment record reflects that Eva Pryor is Isaiah Pryor's wife and Pryor's sister-in-law.

owned the tanks, Parker stated that in 1983 and 1984, Gulf Oil had control of the tanks and that he could only use them if he used Gulf Oil. He added:

> That's the way I remember it. Maybe it's the way I want to remember it. I don't know, but that's—in my mind that was it. That Gulf Oil had put those tanks in there when they put the station in there. They were transferring them to Darby and that Darby being a Gulf distributor, those tanks were under his control. And the only way I could use those tanks was if we buy Gulf Oil and Gulf gasoline.

Parker also testified that he registered the tanks with TCEQ, and when asked why he registered the tanks if Gulf Oil owned them, he answered that he "registered them so the state would be happy with [him] and not come after [him] for not registering the tanks that [were] in the ground."

Isaiah Pryor testified that Joe Nathan Lee introduced him to Parker and negotiated the purchase of the Property for him.[5] He explained that he did not remember the details well because he suffered from depression, "was sick there, very depressed and going through depression, taking medication, everything else," and "medically, physically, spirit—[his] mind wasn't on how things [were] set up there." He stated that he was interested in buying the building, not the land, and that he did not remember if he paid money or Lee paid it for him, how much money was paid, if he signed any documents, or if lawyers prepared any paperwork. Isaiah Pryor also testified that he did not remember Pryor being a participant in the transaction or paying any money. He stated that he did not remember what he intended to do with the building but he also stated that he thought he told Lee he wanted to purchase it "for [his] family, [his] brothers, all [his] brothers." He testified that

---

[5] The summary judgment record does not contain any additional information about Joe Nathan Lee.

11

he did not remember paying taxes on the Property, but if taxes were paid, he paid them. He later stated that he did not pay taxes on the Property.

Isaiah Pryor also testified that he had never seen the warranty deed to Pryor until the lawsuit was filed against Pryor, that he had no idea why Pryor's name was on the deed, and that the address listed on the deed is his address, where he has lived for close to 30 years. He stated that to his knowledge, Pryor does not own the Property and never used the tanks. As to ownership by someone other than Pryor, Isaiah Pryor first testified that Duong was the last person who owned the Property and that he owns the tanks. He then stated that Jefferson County has repossessed the Property and that Duong no longer owns the Property. And later he testified that either the City of Port Arthur or Parker owns the Property. He denied that TCEQ had ever contacted him, Pryor, or any other family member about the tanks and denied knowing that TCEQ had issued a default administrative order against Pryor. He also testified that he had no documents to show that Parker or the City of Port Arthur owns the Property and no documents to show that Pryor does not own the Property.

Black testified that he represented Parker Tire and that the warranty deed was prepared in his office. He stated that did not know and had not met Pryor; that he assumed that Parker told him Pryor was the buyer and gave him Pryor's address, which he did not confirm; that he believed the transaction was a cash sale and was not aware of any contract; and that he had no documents regarding the sale. He testified that he did not attend a closing, did not know if one occurred, and did not record the deed. In short, Black testified that he did not have any documents to show that Pryor does or does not own the Property and that he "just prepared a deed that [he] was

12

asked to prepare and sent it to the title company to close." He also stated his opinion that if the tanks were in the ground at the time of the transaction, then they conveyed because they were affixed.

Finally, Sawyer testified that he began work on the case in January 2016. He stated that the TCEQ file contained a deed indicating that Pryor was the grantee, which led him to believe that Pryor owns the Property. He also stated that his role was to investigate whether there were three underground storage tanks on the Property, not to investigate ownership, and that he did not verify the accuracy of the deed, but he did verify that Pryor was listed as the owner in the Jefferson County Appraisal District tax records. Sawyer also testified that the only two registered owners of the tanks in the TCEQ records were Parker Tire and Duong. He also testified that Parker had registered the tanks and notified TCEQ that they were permanently out of service for selling fuel.

**Pryor's Arguments**

Pryor first argues that the State's reliance on the deed as proof that Pryor owns the Property fails because he has asserted that the deed was fraudulently filed. The deed was acknowledged before a notary public and recorded in the Jefferson County Clerk's office. *See* Tex. Prop. Code § 12.001 (providing for recording of acknowledged instruments concerning property). Pryor does not argue that the deed is void and concedes that generally, after delivery and acceptance, deeds are regarded as "the final expression of the parties' agreement and the sole repository of the terms on which they have agreed." *See Cochran Invs., Inc. v. Chicago Title Ins. Co.*, No. 14-16-00119-CV, 2018 Tex. App. LEXIS 1001, at *11 (Tex. App.—Houston [14th Dist.] Feb. 6, 2018, no pet. h.). Rather, he contends that there is an exception that applies here—i.e., that a party may overcome the presumption that the deed establishes the requisite intent to convey the

property and the binding effect of the terms of the deed by showing that fraud accompanied the delivery or recording. *See Hughes v. Hughes*, No. 05–01-01102-CV, 2002 Tex. App. LEXIS 6713, at *19 (Tex. App.—Dallas Sept. 17, 2002, pet. denied); *Munawar v. Cradle Co.*, 2 S.W.3d 12, 17 (Tex. App.—Corpus Christi 1999, pet. denied) ("One exception to the binding effect of the terms of the deed is when fraud has been committed."). On this record, we do not find this argument persuasive.

Even if the deed was obtained by fraud, it is voidable, not void, and remains effective until set aside. *See Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007). Pryor has not brought an action against Parker Tire for fraud or otherwise sought to void the deed. Instead, he now asserts as a defense that it was fraudulently filed. However, when a deed is merely voidable, rather than void, "equity will not intervene as the claimant has an adequate legal remedy." *Id.* at 618. "Texas law is well settled that once limitations has expired for setting aside a deed for fraud, that bar cannot be evaded by simply asserting the claim in equity." *Id.* Even assuming Pryor did not have notice until the State filed this suit, the deed remains effective until set aside; Pryor has a legal remedy to challenge the deed and cannot merely claim a fraudulent deed in this proceeding. *See id.* Thus, the unambiguous deed remains valid, and the State met its burden to establish that Pryor is the fee simple owner of the Property. *See Parker*, 514 S.W.3d at 220; *Ford*, 235 S.W.3d at 618; *Cochran Invs.*, 2018 Tex. App. LEXIS 1001, at *11.

As the fee simple owner of the surface estate, Pryor is considered the owner of the tanks where, as here, the ownership of the tanks is uncertain, unknown, or in dispute. *See* Tex. Water Code § 26.342(9) (defining "owner" of underground storage tank as person who holds legal

14

possession of tank and providing that when ownership is uncertain, unknown, or in dispute, fee simple owner of surface estate is considered owner of tank).  This presumption applies unless the presumed owner "can demonstrate by appropriate documentation, including a deed reservation, invoice, or bill of sale, or by other legally acceptable means that the tank is owned by another person." *See id.*  Pryor argues that the State has not met its summary judgment burden to prove that he has not demonstrated by any legally acceptable means that someone else is the owner of the tanks because his affidavit and the deposition testimony of Parker, Isaiah Pryor, Black, and Sawyer raise a genuine issue of material fact regarding ownership.  On this record, we cannot agree.

Initially, we observe that much of Pryor's affidavit— his statements that he does not know Parker, did not sign a contract, was not aware of the tanks, did not know who prepared the deed documents, and never conducted business at the site—are irrelevant to the issue of ownership. Concerning his reference to Parker's statement that Gulf owns the property, Pryor merely states that he has provided Parker's testimony as evidence and does not purport to possess personal knowledge that Gulf is the owner.  *See* Tex. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 666 (Tex. 2010) (stating that affidavits must be based on personal knowledge and that affidavit not based on personal knowledge is legally insufficient).  Other statements for which he lacked personal knowledge were excluded from evidence when the trial court sustained the State's objections on that basis.[6]  *See Marks*, 319 S.W.3d at 666.  And his statements that the deed was "fraudulently filed" and that he has not caused any

---

[6]  Pryor does not challenge these evidentiary rulings on appeal.

15

"violations" are legal conclusions that he is not qualified to make and that do not raise a material fact issue. *See Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984) (concluding that party's affidavit statement that indebtedness under note was "renewed and extended" by agreement was legal conclusion and stating that legal conclusion in affidavit is insufficient to raise issue of fact in response to motion for summary judgment); *Anderson v. Snoddy*, No. 06-14-00096-CV, 2015 Tex. App. LEXIS 10047, at *29 (Tex. App.—Texarkana Sept. 25, 2015, pet. denied) (mem. op.) ("A lay witness is not allowed to make legal conclusions or interpret the law."). Pryor relies heavily on the statements in his affidavit that he never agreed to purchase the property and that he never authorized anyone to put his name on the deed or to file the deed. However, Pryor offered these defensive assertions without stating any bases or explanation as to why his name appeared on the presumptively valid deed or why what appeared to be his signature appeared on the Notice to Purchasers. *See Ford*, 235 S.W.3d at 618; *Ridgway*, 135 S.W.3d at 601.

As for the deposition testimony, Parker testified only that he "believed" Gulf owns the property but also stated that he registered the tanks with TCEQ in his own company's name. Isaiah Pryor stated at various times that Duong, Parker, Jefferson County, and the City of Port Arthur own the property. The testimony of these witnesses was inconsistent, confused, and conflicting, and neither witness had any documentation to support his testimony on ownership. Attorney Black testified that he simply prepared a deed that he was asked to prepare and had no other knowledge of the transaction. And TCEQ investigator Sawyer testified that his role was to investigate whether there were three underground storage tanks on the Property, not to investigate ownership, but that he was aware of the deed and had verified that Pryor was listed as the owner in the tax records.

16

Thus, neither attorney Black nor TCEQ investigator Sawyer offered any testimony related to the issue of ownership beyond their recognition of public records naming Pryor as grantee and owner.

Evidence raises a genuine issue of material fact only if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions" and "does not create an issue of material fact if it is so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Parker*, 514 S.W.3d at 220 (internal quotations omitted); *see also Ruiz*, 432 S.W.3d at 875. Here, in light of the unchallenged deed that remains effective until set aside—as well as the signed Notice to Purchasers; Pryor's delay in alleging fraud and failure to date to file a fraud claim against Parker, Parker Tire, Isaiah, and/or Eva; the involvement of Pryor's family members; the confused and conflicting testimony of Parker and Isaiah Pryor; the lack of relevance to ownership of the testimony of Black and Sawyer; and the lack of any testimony at all from Eva, who Parker testified instructed him to put Pryor's name on the deed—the affidavit of Pryor and the deposition testimony of Parker, Isaiah Pryor, Black and Sawyer "are so weak as to do no more than create a mere surmise or suspicion" that Pryor is not the owner and would not "enable reasonable and fair-minded people to differ in their conclusion" that Pryor is the owner, as reflected on the deed and thus do not create a fact issue. *See Parker*, 514 S.W.3d at 220; *Ford*, 235 S.W.3d at 618. Applying the plain language of section 26.342, we conclude that on this summary judgment record, Pryor has not demonstrated by documentation or "other legally acceptable means" that someone other than Pryor owns the storage tanks so as to create a genuine issue of material fact. *See* Tex. Water Code § 26.342(9); *Lippincott*, 462 S.W.3d at 509.

17

Finally, Pryor focuses on Parker's testimony that Parker registered the tanks with the TCEQ in the name of Parker Tire and the testimony of Sawyer that Parker and Duong were the only registered owners on file with the TCEQ. Pryor contends that this evidence shows that Parker Tire and Service is the registered owner of the storage tanks, apparently relying on section 26.342 of the Water Code, which provides that a registered owner shall be considered the owner of the tanks. *See* Tex. Water Code § 26.342(9). However, this statutory presumption that the registered owner is the owner for purposes of section 26.342 is qualified: The presumption applies "until such time as documentation demonstrates to the executive director's satisfaction that the legal interest in the tank system was transferred to a different person subsequent to the date of the tank registration." *See id.* Thus, the executive director of TCEQ has discretion to evaluate additional documentation and determine that someone other than the last registered owner is the "owner" under section 26.342. *See id.*

Parker registered the tanks in the name of Parker Tire and Service in 1988. In 1989, Parker sold the Property to Duong. In April 1993, Duong registered the tanks in his name. According to the State, three days after he registered the tanks in his name, Duong defaulted on the loan and Parker Tire foreclosed on the loan and reacquired the Property. In December 1993, Parker Tire sold the Property to Pryor, and the deed was filed in the Jefferson County property tax records. In addition, the Jefferson County tax records reflect that Matthew Pryor is the certified owner and that property taxes have been paid in his name. On this record, applying the plain language of section 26.342, we conclude that the executive director of TCEQ could have reasonably exercised his discretion to determine that the deed and the tax records satisfactorily demonstrated that the tanks

18

registered in the name of Parker Tire or Duong had been transferred to Pryor since the registration. *See id.*; *Lippincott*, 462 S.W.3d at 509.

Because the State met its summary judgment burden to establish ownership through the presumptively valid deed, the burden shifted to Pryor to create a material fact issue as to ownership. *See Parker*, 514 S.W.3d at 220; *Amedisys*, 437 S.W.3d at 517. On this record, considering all of the evidence in the light most favorable to Pryor, we conclude that the summary judgment evidence was insufficient to demonstrate by documentation or "other legally acceptable means" that someone other than Pryor owns the storage tanks so as to raise a genuine issue of material fact concerning Pryor's ownership of the underground storage tanks and preclude the granting of the State's motion for summary judgment. *See* Tex. Water Code § 26.342; *Parker*, 514 S.W.3d at 220; *Ford*, 235 S.W.3d at 618; *Dorsett*, 164 S.W.3d at 661; *Ridgway*, 135 S.W.3d at 601 (stating that evidence that does no more than create surmise or suspicion of fact is no evidence); *Taylor v. Langham*, No 09-14-00193-CV, 2015 Tex. App. LEXIS 3233, at *26 (Tex. App.—Beaumont Apr. 2, 2015, no pet.) (mem. op.) (holding that affidavits filed by plaintiff were so weak as to do no more than create surmise or suspicion of matter to be proved and therefore constituted no evidence in support of adverse possession claim). We therefore further conclude that the trial court did not err in granting the State's motion for summary judgment. Accordingly, we overrule Pryor's issue.

## CONCLUSION

Having overruled Pryor's sole issue, we affirm the trial court's judgment.

19

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   June 12, 2018